## GUARDIANSHIP OF ANTHONY.

Worcester. March 11, 1988. — July 5, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Mentally Retarded Person. Acquired Immunodeficiency Syndrome. Probate Court*, Jurisdiction, Guardian, Incompetent person. *Guardian*, Consent to medical treatment. *Constitutional Law*, Separation of powers.

A judge of the Probate Court was without authority, in the context of a hearing on a motion by the Department of Mental Health to amend the medical treatment plan of a retarded resident of a State school who was under guardianship, to assume "superintendent powers" over the department and to order the department to conduct tests for acquired immunodeficiency syndrome (AIDS) and venereal disease on the ward and another person for the perceived benefit of the State school community. [726-727]

PETITION filed in the Worcester Division of the Probate and Family Court Department on September 5, 1986.

The case was heard by *Eliot K. Cohen*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Eric J. Mogilnicki*, Assistant Attorney General, for Department of Mental Retardation.

*Denise McWilliams* for the ward.

*Deborah Filler, Steven J. Schwartz, William G. Crane, Robert D. Fleischner & Ernest Winsor*, for Coalition for the Legal Rights of the Disabled, amicus curiae, submitted a brief.

O'CONNOR, J. We consider whether a judge of the Probate and Family Court acted within his authority when, on his own initiative, he assumed "superintendent powers" over the Department of Mental Health (department) relative to the treatment of Anthony and his alleged sexual partner, both of whom are residents of the Walter E. Fernald State School (Fernald

School),[1] and ordered a physician and the medical staff at that institution to conduct medical tests on those individuals to determine whether they have acquired immunodeficiency syndrome (AIDS) or a venereal disease. The department petitioned the Appeals Court for relief under G. L. c. 231, § 118 (1986 ed.). A single justice of that court stayed the order pending resolution of the issues raised by the department's petition. We took the case on our own motion and now vacate the Probate and Family Court judge's order.

Anthony is a moderately retarded man who resides at the Templeton Colony of Fernald School. The Probate and Family Court first exercised jurisdiction over Anthony when a judge of that court appointed a "permanent limited guardian . . . with authorization to assent to the use of anti-psychotic medication in accordance with a substituted judgment treatment plan approved by the Court." Subsequently, the department moved to amend Anthony's medical treatment plan in order to remove a venereal wart which had been discovered on Anthony's body and, on the same day, a judge "reappointed" counsel and a guardian ad litem for Anthony.

At the hearing on the motion, the department informed the judge that the wart had disappeared, and moved to dismiss its motion to amend the treatment plan. Anthony's physician, Anthony's counsel, and Anthony's guardian ad litem supported the department's motion to dismiss. The judge inquired about the cause of the wart and the reason for its disappearance. He also inquired about Anthony's sexual activity and the threat of AIDS and venereal disease not only to Anthony but also to his sexual partner and other residents of the Templeton Colony. The judge was told that neither Anthony nor any other resident of the colony showed symptoms of AIDS, that the colony was developing a program to educate the residents about AIDS in accordance with the Surgeon General's recommendation that education rather than testing was the best means to prevent the transmission of AIDS, and that Anthony and his sexual part-

---

[1] The Walter E. Fernald State School was a facility of the department until July 1, 1987. On that date, it became a facility of the Department of Mental Retardation.

ner had been trained in the use of condoms and had been instructed about the nature and the manner in which AIDS is transmitted. When questioned as to whether Anthony and his partner had been tested for AIDS, the participants in the hearing indicated that Anthony had not been tested, that such testing was not medically advisable for him, and that AIDS testing was not recommended, in part because the test available at the time of the hearing (HTLV-III test) yielded misleading results.

The judge found in material part as follows. "There are no restraints placed on the sexual activities of the residents at the Walter E. Fernald State School in Templeton. . . . The Colony administration is aware of the threat and concerns of A.I.D.S. However, except as outlined below [relative to educational measures] they have not addressed or faced the issue nor have they taken any precautions. . . . It was acknowledged that the Colony environment, the venereal wart of the Ward [Anthony], the Ward's homosexual activity with another in the Colony and the unrestrictive setting of the community was conducive to A.I.D.S. and the potential spread thereof. . . . I find that the Templeton Colony recognizing the potential threat of an outbreak of A.I.D.S. or a venereal disease has averted facing the issue of determining if a major health problem exists in its colony. . . . I find that the threat to the health of the Templeton Community is so grave, that public policy overrides the individual wishes of the Ward and his partner were they to be objectionable under the theory of substituted judgment to the intrusions upon their bodies for blood testing and to the action or lack thereof of the Templeton Colony medical staff."

Based on his findings, the judge issued the following order. "IT IS ORDERED that the Court herewith takes superintendent powers over the Department of Mental Health as it relates to the treatment of the Ward and his partner.

"Dr. Racicot and the medical staff are herewith ordered to forthwith conduct such blood testing and/or other medical test upon the Ward and his sex partner as are necessary to establish if the Ward and/or his partner have A.I.D.S. and/or another venereal disease.

"Such tests are ordered without any assent being required by any limited purpose guardian and are to be expeditiously conducted."

We do not reach the parties' arguments concerning the application of G. L. c. 111, § 70F (1986 ed.), which provides in relevant part that no health care facility and no physician or health care provider shall "test any person for the presence of the HTLV-III antibody or antigen without first obtaining his written informed consent." Also, although we are sensitive to a person's interest in being free from nonconsensual invasion of his or her bodily integrity, we do not decide whether, in this instance, the judge gave appropriate weight to that interest. We do not reach these matters because it is clear that the Probate and Family Court judge did not have authority to assume control of the department and to order the department to conduct tests on Anthony and another party for the perceived benefit of the Templeton Colony. The judge, in effect and incorrectly, usurped the function of the executive branch of the State government.

"Probate courts [are] courts of superior and general jurisdiction with reference to all cases and matters in which they have jurisdiction." G. L. c. 215, § 2 (1986 ed.). By virtue of G. L. c. 201, § 6A (1986 ed.), and G. L. c. 215, § 6 (1986 ed.), the Probate and Family Court has broad powers to fashion equitable remedies in matters relating to the guardianship of mentally retarded persons. *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 755 (1977). *Guardianship of Bassett*, 7 Mass. App. Ct. 56, 64 (1979). However, a Probate Court's authority over matters relating to the guardianship of a mentally retarded person is limited to fashioning relief "in the best interest of [the person] under [its] jurisdiction." *Matter of Moe*, 385 Mass. 555, 561 (1982). The court's power is "to be exercised with an eye single to the welfare of the ward." *Guardianship of Bassett, supra* at 64, quoting *King* v. *Dolan*, 255 Mass. 236, 237 (1926).

The Probate and Family Court had jurisdiction over Anthony because of the guardianship relative to decisions concerning the administration of antipsychotic medication. See G. L. c. 201,

§ 6A, and G. L. c. 215, § 6. However, the order subject to this review was not the product of the judge's focus "with an eye single to the welfare of the ward." Rather, the genesis of the order appears to be the judge's perception that the order was appropriate to meet a threat to the health of the Templeton Colony. Thus, the order was not within the court's jurisdiction based on guardianship.

It is true that, in appropriate circumstances, a court may direct a public official to carry out a statutory duty, and, when there is only one way in which that can be accomplished, to order the official to proceed in that one way. *Attorney Gen.* v. *Sheriff of Suffolk County*, 394 Mass. 624, 630-631 (1985). But, even if we assume that such a power is one of the Probate and Family Court's general equity powers provided by G. L. c. 215, § 6, a matter we need not decide, the circumstances of this case are not appropriate for such an order. No statute requires the department or its agents to conduct medical tests for AIDS. Moreover, there are no findings, and there is nothing in the record which would support findings, that permit the conclusion that testing for AIDS is an appropriate, let alone the only, means by which the department may fulfil any of its statutory duties. Thus, the judge's order constitutes an impermissible "poaching by the judicial branch on executive and legislative territories," *Attorney Gen.* v. *Sheriff of Suffolk County*, *supra* at 631. The order is vacated, and the case is remanded to the Probate and Family Court for such further guardianship proceedings as may be appropriate.

*So ordered.*