D.L. & others[1] *vs.* COMMISSIONER OF SOCIAL SERVICES & others.[2]

Suffolk. February 6, 1992. - May 5, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ

*Department of Social Services. Mental Health. Child in Need of Services. Practice, Civil*, Commitment of mentally ill person. *Minor*, Care and protection. *Administrative Law*, Regulations. *Regulation. District Court*, Jurisdiction. *Juvenile Court*, Jurisdiction.

The Department of Social Services acted properly under the authority conferred on it by G. L. c. 18B, § 7 (*i*), and in furtherance of the obligations imposed on it by G. L. c. 18B, § 2 (A) (8), and G. L. c. 119, to promulgate 110 Code Mass. Regs. § 11.16 (4) and (5), allowing it to consent to the admission of children in its custody to an inpatient mental health facility for care. [565-567]

General Laws c. 119, § 26, providing that, once a child is determined to be in need of care and protection, the judge may "make any . . . appropriate order with reference to the care and custody of the child as may conduce to his best interests," was interpreted by this court as permitting a judge to approve an application by the Department of Social Services, when properly supported, for a child's retention beyond ninety days in a mental health facility; furthermore, the court concluded, similar authority exists under §§ 39E and 39G of G. L. c. 119 as to children who are in the custody of the department and have been determined to be in need of services. [567-568]

CIVIL ACTION commenced in the Superior Court Department on December 6, 1989.

[1]Twelve other minors who along with D.L. at the time the amended complaint was filed were receiving care at the Gaebler Children's Center, an inpatient mental health facility. We acknowledge·the amicus brief, filed by the Committee for Public Counsel Services in support of the plaintiffs' position.

[2]The Commissioner of Mental Health and the chief operating officer of the Gaebler Children's Center.

The case was heard by *R. Malcolm Graham*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Melissa Stimell* for the minors.

*Jon Laramore*, Assistant Attorney General, for the Commissioner of Social Services & others.

*Stan Goldman*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GREANEY, J. The plaintiffs, thirteen children in the custody of the Department of Social Services (DSS), brought an action against the defendants in the Superior Court seeking declaratory and injunctive relief.[3] The plaintiffs' amended complaint sought declarations that: (1) a regulation promulgated by DSS, which authorizes it to consent to the admission of children in its custody to an inpatient mental health facility for care, is invalid; and (2) a District or Juvenile Court having jurisdiction under G. L. c. 119 (1990 ed.), over the case of a child in the custody of DSS may not continue the child's treatment in an inpatient mental health facility. If successful on these points, the plaintiffs' amended complaint also sought the release of children in the custody of DSS now receiving care as inpatients in mental health facilities. Cross motions for summary judgment were filed, and a judge of the Supe-

---

[3]The action was brought on behalf of the minor plaintiffs by the Mental Health Legal Advisors Committee (committee). See G. L. c. 221, § 34E (1990 ed.). The defendants filed a motion in the Superior Court to dismiss the action on the ground that the plaintiffs "lack standing." The judge did not expressly rule on the motion, but his decision of the merits indicates that the motion was at least implicitly denied. According to their brief, the thrust of the defendants' motion appears to be that (1) each plaintiff was required to bring his or her action in the individual District or Juvenile Court which had adjudicated the underlying G. L. c. 119 case, and (2) the committee lacked authority to bring the action on behalf of the plaintiffs. We disagree with the first point; the case is clearly an appropriate one for declaratory relief. See G. L. c. 231A, §§ 1 and 2 (1990 ed.). As to the second point, we conclude that, for the purposes of this action, the committee had authority to bring the action on behalf of the plaintiffs consistent with its statutory "duty . . . to assist and advise indigent patients and residents in . . . mental health . . . facilities of the commonwealth." G. L. c. 221, § 34E.

rior Court entered a memorandum and order in which he concluded that DSS and the courts had acted lawfully in all challenged respects. A judgment declaring the rights of the parties entered, and the plaintiffs appealed. We granted their application for direct appellate review, and now with one modification affirm the judgment.

The facts are not in dispute. The plaintiffs are thirteen children, each of whom was placed in the custody of DSS after a judge found pursuant to G. L. c. 119, §§ 24-26, that the child was in need of care and protection because his or her parents were unfit, or that the child was in need of services pursuant to c. 119, § 39E. At the time the action was filed, the plaintiffs were between the ages of six and fifteen.[4] While in DSS custody, each plaintiff was admitted to the Gaebler Children's Center (Gaebler), a unit of the Metropolitan State Hospital, which is administered by the Department of Mental Health (DMH). Gaebler is an inpatient mental health facility operated exclusively for the treatment of children and is the only public facility in the Commonwealth offering such treatment solely to children.

All the plaintiffs were originally admitted to Gaebler, in accordance with G. L. c. 123, § 12 (1990 ed.), for a period not to exceed ten days after a physician determined that each child was a danger to himself or herself or to others.[5] Each

---

[4] We decide the issues presented in this case solely with respect to the plaintiffs and those in their age group.

[5] General Laws c. 123, § 12, provides for the emergency ten-day commitment to a mental health facility of any person where there is reason to believe that the failure to hospitalize such person would create a "likelihood of serious harm" by reason of mental illness.

General Laws c. 123, § 1 (1990 ed.), defines the term "[l]ikelihood of serious harm" as follows: "(1) a substantial risk of physical harm to the person himself as manifested by evidence of, threats of, or attempts at, suicide or serious bodily harm; (2) a substantial risk of physical harm to other persons as manifested by evidence of homicidal or other violent behavior or evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them; or (3) a very substantial risk of physical impairment or injury to the person himself as manifested by evidence that such person's judgment is so affected that he is unable to protect himself in the community and that reasonable provision for his protection is not available in the community."

child had serious mental health problems.[6] At some point during this ten-day period, decisions were made to retain the plaintiffs at Gaebler for up to ninety days pursuant to the provisions of 110 Code Mass. Regs. § 11.16 (4) and (5) (1988), the DSS regulation that is disputed in this case[7], and G. L. c. 123, § 10 (*a*) (1990 ed.). When the ninety-day period provided for by § 11.16 (4) expired, nine of the thirteen plaintiffs were retained at Gaebler, pursuant to orders entered under § 11.16 (5), by judges in the District or Juvenile Court which had heard and decided a particular plaintiff's care and protection case or child in need of services petition. Each extension was supported by evidence from a physician that the plaintiff in question would be a danger to himself or herself or others in a placement less restrictive than that furnished by Gaebler. In several cases, hearings were held before a plaintiff's continued admission was approved, and in no case did any plaintiff's attorney or guardian object to the extended stay.[8]

---

[6]The admissions were based on information of which the cases of the following two plaintiffs are typical. N.C., was hospitalized at age thirteen because he "had been demonstrating that he is a harm to himself and others; banging self against walls, biting self, hitting, kicking, biting staff to a degree that has injured staff." J.M., was hospitalized at age twelve because he "hear[d] voices telling him to hurt himself and to kill other people" and has manifested "self-abusive behaviors, assaultive behaviors, run away behaviors, sexualized behaviors."

[7]The regulation, 110 Code Mass. Regs. § 11.16 (4) and (5) (1988), provides in relevant part, as follows:

"(4) *Consent by Department Area or Regional Director*. The Department (by an Area or Regional Director only) may consent to the admission of a person:

"(a) (*custody*:) in the custody of the Department . . . to a mental health facility for an initial period of time not to exceed a maximum of ninety (90) days.

"(5) *Judicial Review After 90 days*. In any case where the Department has consented to the admission of a person to a mental health facility, the Department shall seek judicial review before it consents to an extension of the admission of such person to a mental health facility beyond a period of ninety (90) days."

[8]Similarly, there were no objections to the plaintiffs' original admissions by those appointed to represent them.

The record also contains information concerning the handling by DSS of children like the plaintiffs. We summarize that information. Many of the approximately 10,000 children in the custody of DSS have special mental health needs, generally because of the abuse, neglect, or instability that precipitated their placement with DSS. During 1989 (the last year data were available at the time judgment entered in this case), more than 600 children in the custody of DSS were hospitalized for inpatient mental health care because their mental health problems were too severe to be handled on an outpatient basis. Many of these children would benefit from inpatient care at a mental health facility according to medical and other experts who have examined them, but they do not meet the standard for emergency restraint under G. L. c. 123, § 12. See note 5, *supra.*

Because of a serious shortage of inpatient mental health placements for children, it is difficult for DSS to secure prompt and appropriate mental health care for children. A deputy commissioner of DSS indicated in an undisputed affidavit which was before the judge that "[t]here is a serious shortage of beds in psychiatric facilities that provide treatment to children and an even more extreme shortage of openings for young children." The deputy commissioner estimated that only 130 beds in eight facilities are available for children in the custody of DSS who need mental health care. This shortage is exacerbated because most children in the custody of DSS pay for medical care through Medicaid and can be placed only in facilities that accept Medicaid. When a child in need of inpatient care cannot be placed immediately. because of insufficient space, DSS often faces a dilemma because there are few facilities that will care for deeply disturbed and often severely behaviorally-disordered children pending inpatient placement. According to the deputy commissioner, DSS, in order to carry out its directive to protect children in its custody, must have the authority to seek admission of children exhibiting signs of serious mental illness

to an inpatient mental health facility as soon as openings occur.[9]

The plaintiffs argue that DSS can place a child in its custody in a mental health facility only in accordance with certain provisions of G. L. c. 123 (1990 ed.), the statute which governs, in a variety of situations, treatment in a mental health facility. The plaintiffs recognize, insofar as a child is concerned, that G. L. c. 123, § 10 (*a*), permits a child's admission to a mental health facility on a voluntary basis if the child needs care and treatment and application is made "by a parent or guardian of a person on behalf of a person under the age of eighteen years." The plaintiffs also recognize that G. L. c. 123, § 12, permits involuntary restraint of any person for up to ten days on application of certain persons or on court order if there is reason to believe that the person poses a likelihood of serious harm.[10] The plaintiffs argue, however,

---

[9]The deputy commissioner provided examples of the need for DSS to have the authority to act promptly to provide immediate inpatient mental health care for children who need it. Two examples are as follows:

In one case, a four year old child who had been abused became assaultive and suicidal, with such severe behavioral problems that he was refused admission by the psychiatric ward of a hospital. He had to be physically restrained until DSS found a private psychiatric hospital which would admit him. The private hospital would only accept the child as a voluntary admission, not a "commitment" pursuant to G. L. c. 123, § 12, so DSS could obtain treatment for him only by use of its power to admit voluntarily under 110 Code Mass. Regs. § 11.16 (4).

In another case, a teenaged girl with a history of prostitution and drug use needed inpatient drug treatment and a full psychiatric evaluation. Because of her history of running away from placements (even jumping from moving cars transporting her to placements) she required inpatient treatment. She did not meet the requirements of G. L. c. 123, § 12, so she could obtain this treatment only by the procedures set forth in 110 Code Mass. Regs. § 11.16 (4).

[10]Section 12 goes on to provide, however, that, as to a child, involuntary restraint cannot occur until an opportunity is afforded for the child's admission on a voluntary basis under § 10 (*a*). This provision of § 12 reads as follows:

"(*c*) No person shall be admitted to a facility under the provisions of this section unless he, or his parent or legal guardian in his behalf, is given an opportunity to apply for voluntary admission under the provisions of paragraph (*a*) of section ten and unless he, or such parent or legal guardian has been informed (1) that he has a right to such voluntary admission,

that § 10 (*a*), the provision most relevant to this case, does not apply because DSS is neither a parent nor a guardian of any of them. Therefore, the plaintiffs conclude that admission of a child in the custody of DSS to a mental health facility beyond an initial ten-day restraint can only be accomplished in accordance with G. L. c. 123, §§ 7 and 8. These provisions concern involuntary commitment of persons to mental health facilities, and their retention, on petitions filed by the superintendent of the facility with an appropriate court after an adversary hearing is held and certain findings made.[11]

The judge below rejected the plaintiffs' argument that DSS was required to follow the involuntary commitment and retention procedures of G. L. c. 123, §§ 7 and 8, in continuing the plaintiffs' placements in Gaebler. He concluded that the authority for DSS to apply for admission of children in its custody to a mental health facility is contained in other statutes, in particular G. L. c. 18B, § 2 (A) (8) (1990 ed.), and various provisions of G. L. c. 119, the general statute providing for the protection and care of children. Implicit in the judge's decision is the recognition that, while DSS is not a parent or guardian, as the party having full custody of these children under G. L. c. 119, it has, consistent with that statute and its power to make regulations, see G. L. c. 18B, § 7 (*i*) (1990 ed.), the right to fashion a procedure which will permit it, in the best interest of a child in its custody, to exercise authority similar to a right of a parent or guardian

and (2) that the period of hospitalization under the provisions of this section cannot exceed ten days. At any time during such period of hospitalization, the superintendent may discharge such person if he determines that such person is not in need of care and treatment."

[11]Before an involuntary commitment or retention can be approved under these provisions, it would have to be shown beyond a reasonable doubt, see *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 276-277 (1978), that a failure to commit or to retain the person who is the subject of the petition would create a likelihood of serious harm, see *Doe* v. *Doe*, 377 Mass. 272, 277 (1979), and no less restrictive form of hospitalization is appropriate, see *Commonwealth* v. *Nassar*, 380 Mass. 908, 917-918 (1980).

under G. L. c. 123, § 10 (*a*), voluntarily to admit a child to a mental health facility or, when necessary, to seek a ten-day admission under G. L. c. 123, § 12. We agree.

In G. L. c. 18B, § 2 (A) (8), the Legislature has imposed a broad obligation on DSS to provide "residential care for children with special needs." By means of G. L. c. 119, the Legislature expanded on this general mandate with respect to children placed in the custody of DSS pursuant to petitions for care and protection brought under G. L. c. 119, §§ 24-26, and those children committed to the custody of DSS pursuant to § 39E and § 39G, who are in need of services. General Laws c. 119, § 1, expressly provides that "[t]he purpose of this chapter is to insure that the children of the commonwealth are protected against the harmful effects resulting from the absence, inability, inadequacy or destructive behavior of parents or parent substitutes, and to assure good substitute parental care in the event of the absence, temporary or permanent inability or unfitness of parents to provide care and protection for their children." Section 21 of G. L. c. 119 states that the term "[c]ustody," as used in c. 119, confers on the DSS, when it has custody of a child, the power "to determine the child's place of abode, medical care and education . . . [and] . . . to consent to contracts otherwise requiring parental consent." Further, § 32 of G. L. c. 119 provides "that any child [in DSS custody] who upon examination is found to be in need of special care, treatment or education may, if it is found by [DSS] to be in the best interest of the child, be placed in a public or private institution or school, the primary purpose of which is the special care, treatment or education of children."

We think it is apparent from the language of these statutes that the Legislature wants DSS to have authority, at least coextensive with that which would be possessed by a parent or guardian, to obtain all necessary or appropriate medical care for any child in its custody, including, where advisable, care in a mental health facility. A parent, of course, would have the authority pursuant to G. L. c. 123, § 10 (*a*) and § 12 (*c*), to admit his or her child to a mental health facility

if the child is in need of care. We read the statutes referred
to above to confer similar authority on DSS.

To conclude otherwise would place children in DSS cus-
tody at a substantial disadvantage to children in the custody
of their parents. We are not inclined to think that the Legis-
lature would want the statutes interpreted to compel DSS to
treat necessary inpatient mental health care for children in
the plaintiffs' situation as requiring petitions for involuntary
commitment. This is particularly so when the Legislature's
choice of language in c. 119 contains no words restricting
DSS in its placements beyond DSS acting "in the best inter-
est" of a child; when there is no language in G. L. c. 123,
§ 10 (*a*) or § 12 (*c*), excluding DSS from the rights those
provisions confer on parents and guardians; and when DSS
has demonstrated that it has in its custody many children
who require inpatient mental health care, often on an emer-
gency basis, and that such care is difficult to obtain because
of a shortage of beds for children with serious mental health
problems and the reluctance of private providers to accept
Medicaid placements. In substance, G. L. c. 119 confers on
the DSS and the courts, which act in the place of parents for
children in need of care and protection or children in need of
services, the same authority that parents possess to obtain
mental health care for their children under c. 123, § 10 (*a*)
and § 12 (*c*). We note that the record shows that DSS acted
in accordance with the provisions of G. L. c. 123, § 10 (*a*)
and § 12 (*c*), in having the plaintiffs admitted to Gaebler and
that the regulation at issue imposes more restrictions on DSS
than the regulations of DMH impose on a parent who applies
for the voluntary admission of a child pursuant to c. 123,
§ 10 (*a*). Cf. 104 Code Mass. Regs. § 3.06 (1986) (no provi-
sion for judicial review of voluntary admission of a child
under sixteen by his or her parents).

For these reasons, we conclude that DSS acted properly
under the authority conferred on it by G. L. c. 18B, § 7 (*i*),
to promulgate 110 Code Mass. Regs. § 11.16 (4) and (5), to
further the obligations imposed on DSS by G. L. c. 18B, § 2

(A) (8), and G. L. c. 119.[12] See *Worcester Sand & Gravel Co.* v. *Board of Fire Prevention Regulations*, 400 Mass. 464, 466 (1987); *White Dove, Inc.* v. *Director of the Div. of Marine Fisheries*, 380 Mass. 471, 477 (1980).

We also reject the plaintiffs' contention that a District Court or a Juvenile Court handling a care and protection petition lacks authority under § 11.16 (5) to approve a request by DSS for a child's continued placement in an inpatient mental health facility if it appears the placement will exceed ninety days.

A court's authority to act in this regard is contained in G. L. c. 119, § 26, which provides that, once a child is determined to be in need of care and protection, the judge may "make any . . . appropriate order with reference to the care and custody of the child as may conduce to his best interests." We have interpreted § 26 broadly to further the welfare of the child, see *Custody of a Minor (No. 1)*, 385 Mass. 697, 704 (1982), and believe the quoted language permits a judge to approve an application by DSS, when properly supported, for a child's retention beyond ninety days in a mental health facility.[13] Similar authority exists under § 39E and

---

[12]We are not persuaded by the plaintiffs' additional argument that these statutes cannot be read to authorize DSS to make the placements in question because G. L. c. 119, § 39G (*a*) (1990 ed.), authorizes a judge, once a child has been determined to be in need of services, to prescribe, as a condition of custody, that the child receive "medical, psychological, psychiatric . . . services." The plaintiffs reason that the lack of a separate reference to "psychological" or "psychiatric" care in § 21 implies that mental health care cannot be provided under G. L. c. 119, for a child who is found to be in need of care and protection. We think the more plausible explanation for the difference in language is found in the fact that § 21 was enacted in 1954, see St. 1954, c. 646, § 1, almost twenty years before § 39G, see St. 1973, c. 1073, § 5, and that, in enacting § 39G (*a*), the Legislature was more conscious and careful about mental health treatment for children in the custody of DSS.

[13]The judicial proceedings under 110 Code Mass. Regs. § 11.16 (5) contain safeguards to ensure that the children are properly placed in inpatient mental health facilities. The children are represented, G. L. c. 119, § 29; they have the power to subpoena witnesses to hearings and to cross-examine them. Moreover, the courts which handle care and protection proceedings have expertise in the area of mental health treatment because

§ 39G of G. L. c. 119, as to children who are in DSS custody and have been determined to be in need of services.

The judgment is affirmed except for paragraph c thereof for which there is substituted a declaration that DSS may proceed in the manner in which it did in seeking care for children like the plaintiffs who are in its custody.[14]

*So ordered.*

---

they have commitment power and routinely handle commitment cases under G. L. c. 123.

[14]The judgment upholds the DSS regulation as valid and declares that DSS and courts have authority to place children in DSS custody in inpatient mental health care. Paragraph c of the judgment declares that DSS is not required to satisfy the criteria set forth in G. L. c. 123, § 6, in making the placements. This paragraph appears to be broader than the judge may have intended and the facts of the case warrant.