## CARE AND PROTECTION OF ISAAC.

Suffolk. November 9, 1994. - March 7, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Separation of powers, Judiciary. *Judge. Department of Social Services. Minor*, Care and protection, Custody. *Parent and Child*, Care and protection of minor, Custody of minor. *Administrative Law*, Judicial review.

Discussion of the administrative scheme created by G. L. c. 119, §§ 21-37, with respect to the obligations of the Department of Social Services in regard to the care of children in its custody [607-608], and the extent of the authority the statute gives to a judge reviewing a decision made by the department concerning residential placement of an individual child committed to its permanent custody [609-611].

The court concluded that, in a care and protection proceeding in which a custodial decision of the Department of Social Services is challenged, the standard of judicial review of the department's action is whether there was legal error or abuse of discretion; if such error is found, the authority of the judge under G. L. c. 119, §§ 21, 26 and 29B, extends to ordering the department to act in accord with applicable statutory and regulatory provisions. [611-613]

In a care and protection proceeding in which the judge exceeded his authority under the provisions of G. L. c. 119, §§ 21 and 26, in reviewing the action of the Department of Social Services by ordering, over the department's objection, a specific placement for an individual child in the department's permanent custody, this court declined to remand the matter for reconsideration under the proper standard inasmuch as a suitable long-term residential placement for the child had been found while the matter was pending on appeal. [614]

The court discussed the procedure and factors to be considered by the judge in a care and protection proceeding in reviewing a challenged custodial decision of the Department of Social Services. [614]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 12, 1993.

The case was reported by *Wilkins*, J.

*Pierce O. Cray*, Assistant Attorney General, for Department of Social Services.

*Carol A. Donovan*, Committee for Public Counsel Services (*Jinanne S.J. Elder*, Committee for Public Counsel Services, with her) for the minors.

*Judith A. Wolfe* for the mother.

*Barbara R. Adler*, for the father, was present but did not argue.

*Anthony J. DeMarco, Allan G. Rodgers & Jacquelynne J. Bowman*, for Children's Law Center of Massachusetts & another, amici curiae, submitted a brief.

GREANEY, J. On or about April 30, 1993, Isaac[1] and his four siblings were adjudicated children in need of care and protection pursuant to G. L. c. 119, § 26 (1992 ed.), by a judge of the Gloucester District Court sitting in juvenile session. Custody of the children was granted to the Department of Social Services (department). On October 26, 1993, the mother filed a motion requesting increased visitation with one of the children. At a hearing on that motion, before another judge, the guardian ad litem appointed to monitor the provision of services to the family raised a question concerning the residential placement of Isaac, whose emotional state had required commitment to the child and adolescent psychiatric treatment program at McLean Hospital (hospital). Isaac's treating psychiatrist had recommended that the child be discharged from the hospital and returned to his previous placement at the Robert F. Kennedy Children's Center (school), with an additional staff member assigned to him full time to control his behavior. The guardian ad litem endorsed this recommendation. The department, which had been seeking an alternative residential placement for Isaac, opposed the recommendation to return Isaac to the school, in part because the school proposed to charge the department $160 per day (beyond the $169 per day charged for a stan-

---

[1]In accord with our customary practice, the child is referred to by a pseudonym.

dard residential placement) for the services of the additional staff member.

The judge treated the motions as a request by a parent and a guardian ad litem for a review and redetermination of the children's current needs under G. L. c. 119, § 26, fourth par., and, over the department's objection, ordered that Isaac be returned to the school with the recommended additional staff supervision. The department moved for reconsideration and for a stay of the order pending appeal. At the close of a hearing on these motions, during which evidence was presented by various representatives of the parties, the judge denied the department's motions and reaffirmed his order that Isaac be returned to the school with additional staff support funded by the department. The department filed a petition for relief from the judge's order with a single justice of this court, see G. L. c. 211, § 3 (1992 ed.), who reserved and reported the following question to the full court:

"Does a judge sitting in a juvenile session have authority to order the Department of Social Services, over its objection, to provide a specific placement and a specific staffing level for a child who has been adjudicated to be in need of care and protection and committed to the Department's (other than temporary) custody pursuant to G. L. c. 119, § 26?"

The single justice further noted: "The order of commitment designates custody 'until the age of eighteen or until, in the opinion of the Department of Social Services, the object of the commitment has been accomplished, whichever comes first.' It is not temporary custody as provided under [G. L. c. 119,] § 26 (2), and for a short-hand description could be called permanent custody." The question encompasses situations, such as this one, in which a judge's order requires the department to expend funds it would otherwise not be required to expend.

We answer the question, "No."

The following factual background is drawn from the record on the basis of which the question has been reported. The department placed Isaac at the school on September 4, 1991, shortly after custody had been awarded to the department. His older brother also was placed at the school. At some point, Isaac's behavior began to deteriorate. He became self-abusive and aggressive and was, consequently, a disruptive force in the school setting. By mid-September, 1993, the school staff had assigned a staff member to work with Isaac on a one-on-one basis. Isaac's behavior did not improve over the next month. On October 15, 1993, a crisis intervention team at a local mental health center had him admitted to the hospital. Isaac's behavior did not improve while he was at the hospital, and, on November 8, 1993, his treating psychiatrist recommended that he be returned to the school, with one-on-one supervision.

All of those involved in the care and protection proceeding agreed that the school was no longer an appropriate long-term placement for Isaac. The department had begun to seek a suitable long-term residential placement for him. It was the opinion of the guardian ad litem, based on discussions with various service providers, that it would be in Isaac's best interests to make the transition to another placement from the school. It was the department's position that Isaac should remain at the hospital until a long-term residential placement suitable to meet his needs was identified. This position was based in part on budgetary constraints. In 1990, the department ceased funding one-on-one special services, like those ordered for Isaac, which it had concluded were inordinately expensive.[2]

---

[2]The judge has since approved a long-term residential placement for Isaac that is acceptable to the department. At the parties' request, the single justice nonetheless reserved and reported the legal issue in this case as one that is "capable of repetition while evading review." *Norwood Hosp.* v. *Munoz*, 409 Mass. 116, 121 (1991) (where issue is one of public importance, likely to recur in similar factual circumstances, court may decide case that would otherwise be dismissed as moot).

In its motions to vacate the order and for reconsideration, the department argued (as it does to this court) that a judicial order mandating a specific residential placement impermissibly infringes on the department's prerogative to implement its statutory mandate by reasonable methods of its own choosing. According to the department, the pertinent statutory provisions and policy considerations "strongly support the application of the traditional rule [governing the relationship between an administrative agency and the courts] to the [d]epartment's placement and staffing decisions," because these decisions have an impact on the department's allocation of finite resources among a large population of children in need of services.

In denying the department's motions, the judge acknowledged the department's primary responsibility for determining the residential placement of a child who has been committed to its custody pursuant to G. L. c. 119, § 26, second par., and the deference due to decisions made in this regard by the department. He concluded, nonetheless, that G. L. c. 119, considered in its entirety, grants authority to a judge to resolve a dispute between the department and other interested parties concerning a suitable residential placement for a child in the department's custody, and that resolution of the dispute may take the form of an order dictating a specific residential placement for a child. We disagree.

The "traditional rule" to which the department refers was set out in *Matter of McKnight*, 406 Mass. 787, 792 (1990), as follows: "A court, of course, may not properly exercise the functions of the executive branch of State government. See *Guardianship of Anthony*, 402 Mass. 723, 727 (1988). On the other hand, a court has the right to order the department to do what it has a legal obligation to do. *Id. Attorney Gen.* v. *Sheriff of Suffolk County*, 394 Mass. 624, 629-630 (1985). Where the means of fulfilling that obligation is within the discretion of a public agency, the courts normally have no right to tell that agency how to fulfil its obligation. *Id.* at 630. See *Bradley* v. *Commissioner of Mental Health*, 386 Mass. 363, 365 (1982). Only when, at the time a judicial

order is entered, there is but one way in which that obligation may properly be fulfilled, is a judge warranted in telling a public agency precisely how it must fulfil its legal obligation. See *Guardianship of Anthony, supra* at 727; *Attorney Gen.* v. *Sheriff of Suffolk County, supra* at 630." At issue is whether the administrative scheme created by G. L. c. 119, §§ 21-37, of which pertinent provisions are set out below, differs substantially from the ordinary administrative scheme in the degree of authority given to the courts and the manner in which it may be exercised.

The department is charged with providing substitute care for children whose families are unable to provide adequate care and protection for them, and is authorized to promulgate rules and policies "necessary for the full and efficient implementation of programs . . . in the area of social services." G. L. c. 18B, § 3 (B) (1) (1992 ed.). General Laws c. 119, §§ 24-26, mandate proceedings by which, on proof that a child is suffering the effects of neglect or abuse, the department may obtain custody of the child. Section 26[3] provides that if a judge finds that the allegations in a care and protection petition have been proved, the child may be committed to the custody of the department, or the judge may "make any other appropriate order with reference to the care and custody of the child as may conduce to his best interests."

The person or the entity having "custody" of the child has the power "(1) to determine the child's place of abode, medical care and education; (2) to control visits to the child; (3)

---

[3]General Laws c. 119, § 26, provides, in part, as follows:

"If the court finds the allegations in the petition proved within the meaning of this chapter, it may adjudge that said child is in need of care and protection and may commit the child to the custody of the department until he becomes eighteen years of age or until in the opinion of the department the object of his commitment has been accomplished, whichever occurs first; or make any other appropriate order with reference to the care and custody of the child as may conduce to his best interests . . . ."

Following this paragraph, the statute sets out a nonexhaustive list of alternative placements and custodial arrangements available for consideration by a judge.

to consent to enlistments, marriages and other contracts otherwise requiring parental consent." G. L. c. 119, § 21 (1992 ed.). Children in the department's custody are to be placed in private foster care, "provided, that any child who upon examination is found to be in need of special care, treatment or education may, if it is found by the department to be in the best interest of the child, be placed in a public or private institution or school." G. L. c. 119, § 32 (1992 ed.).

General Laws c. 119 contains several provisions by which a parent or other interested party may obtain judicial review of the current circumstances of a child who has been adjudicated in need of care and protection. If a parent or other guardian objects to the department's manner of carrying out any power concerning custody, including the place of residence selected by the department, "said parent or guardian may take [*sic*] application to the committing court and said court shall review and make an order on the matter." G. L. c. 119, § 21. Under § 26, fourth par., a parent or other interested party, including the department, periodically may petition a judge for a review and redetermination of a child's current needs and circumstances.[4] In addition, G. L. c. 119, § 29B, requires a judge, within eighteen months of the original commitment, to determine the future status of a child who has been adjudicated in need of care and protection.[5]

---

[4]Paragraph 4 of § 26 provides, in part:

"On any petition filed in any court pursuant to this section, the department, parents, person having legal custody of, counsel for a child, the probation officer, guardian or guardian ad litem may petition the court not more than once every six months for a review and redetermination of the current needs of such child whose case has come before the court . . . ."

[5]At an eighteen-month review, a judge is required to consider "whether or not it is in the child's best interests to be returned to the parents; to be continued in substitute care for a specified period, after which the child is to be returned to the parents or guardian; to be placed in another permanent placement; to be placed for adoption; to have a guardian, other than the department or its agent appointed; or, because of the child's special needs or circumstances, to be continued in substitute care on a permanent or longterm basis in a specific placement." G. L. c. 119, § 29B (1992 ed.).

We are concerned here with the extent of the authority this legislation gives to a judge reviewing a decision made by the department concerning the residential placement of an individual child committed to its custody.

There is no doubt that the judge's order that Isaac be returned to the school was intended to be in the child's best interests. The relevant provisions of G. L. c. 119, however, contain no general grant of authority to a judge to enter an order intended to be in a child's best interests. The second paragraph of § 26, on which the judge relied, is written in the disjunctive. See note 3, *supra*. See also *Dawson* v. *Rogers*, 7 Mass. App. Ct. 351, 353 (1979). When it has been concluded that a child is in need of care and protection, a judge may commit a child to the custody of the department, *or* the judge may "make any other appropriate order with reference to the care and custody of the child as may conduce to his best interests." These are dispositional alternatives, and when a child is placed in the permanent custody of the department, decisions related to normal incidents of custody, by the terms of §§ 21, 26 and 32, are committed to the discretion of the department.[6] It is entirely appropriate for a judge to offer guidance to the department concerning a child's residence, but it should be understood that, when permanent custody has been awarded to the department, with it goes the authority, described in § 21, to make decisions concerning a child's specific place of abode.

---

[6]General references to a judge's power to enter an order in "the best interests" of the child, in the decisions in *D.L.* v. *Commissioner of Social Servs.*, 412 Mass. 558, 567 (1992), and in *Custody of a Minor (No. 1)*, 385 Mass. 697, 704 (1982), may be read to suggest a broad and general grant of authority to enter orders believed to be in a child's best interests. The *Custody of a Minor (No. 1)* decision concerned entry of a no resuscitation order on the medical chart of a terminally ill infant in the department's custody. The *D.L.* case concerned lengthy commitments to a mental health facility of mentally ill children in the department's custody. Both cases concerned actions which, if taken by the department without judicial approval, might have been challenged as governmental action infringing on the constitutional rights of children. No comparable question is raised by a dispute between a parent and the department over the proper residential placement of an individual child.

In the event of a challenge by a parent or a guardian to the department's manner of carrying out its custodial responsibility, § 21 authorizes a judge to *"review* and make an order on the matter" (emphasis added). The attorney for the child[7] argues that the judge properly invoked this provision as authority for his order that Isaac be returned to the school. In the absence of language specifically limiting judicial review of agency action for illegality or abuse of discretion, it is argued, a legislative intent to limit judicial authority should not be read into the statute. In view of the customary and well-established standard governing judicial review of discretionary agency activities, we do not view the absence of such language as determinative. The word "review" requires, in the context of judicial consideration of an administrative decision, a reexamination of an agency's actions, and not a de novo consideration of the merits of the parties' positions. See *Mayor of Beverly* v. *First Dist. Court of Essex*, 327 Mass. 56, 60 (1951) ("review" indicates a reexamination of a prior decision "for the purpose of preventing a result which appears not to be based upon the exercise of an unbiased and reasonable judgment"). See also *Attorney Gen.* v. *Department of Pub. Utils.*, 390 Mass. 208, 228 (1983).

In regard to other statutes which provide for judicial review of discretionary administrative decisions without specifying the applicable standard of review, we have concluded that "the appropriate standard of review is error of law or abuse of discretion, as measured by the 'arbitrary or capricious' test." *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 878 (1983). See *Roslindale Motor Sales, Inc.* v. *Police Comm'r of Boston*, 405 Mass. 79, 84 (1989). Compelling policy considerations mandate the same conclusion with respect to § 21. As we observed in the *McKnight* decision, "The placement of individuals and the coordination of the

---

[7]Attorneys for the mother and the father also have filed briefs urging an affirmative response to the reported question. The issues raised by the mother and the father are identical to those raised by the attorney for the child. We shall refer in this opinion to issues raised by the child.

provision of services financed by [a social services agency] are executive functions. Individually focused judicial mandates impinging on those functions . . . would be disruptive of attempts to carry out broad departmental policies." *Matter of McKnight, supra.* The Legislature, having charged the department with administering a highly complex social services program within the constraints of a finite annual appropriation, could not have intended that every individual placement decision of the department be subject to de novo judicial review. See *Williams* v. *Secretary of the Executive Office of Human Servs.*, 414 Mass. 551, 569-570 (1993). See also *In re Doe*, 120 R.I. 885, 895 (1978) ("The setting of priorities among those who are deemed to be suitable candidates for treatment is most suitably performed by the administrative agency rather than by a court. . . . [W]here a court may order a large sum to be expended . . . it is impossible to perceive the ramifications of such a decision. An agency . . . has the responsibility of allocating scarce resources among myriads of competing requirements . . ."). We conclude that a judge in a care and protection proceeding, faced with a parental (or a guardian's) challenge to a custodial decision of the department, should review the department's action, based on the evidence before the judge, including evidence and information at any prior hearings, for legal error or abuse of discretion and, if there is error under this standard, order the department to act in accord with applicable statutory and regulatory imperatives. See *Guardianship of Anthony*, 402 Mass. 723, 727 (1988); *Attorney Gen.* v. *Sheriff of Suffolk County*, 394 Mass. 624, 629-631 (1985).

While the child focuses primarily on § 21 in support of his position, he also contends that the judicial review provisions of §§ 26, fourth par., and 29B, see notes 4 and 5, *supra*, authorize a judge to order a specific residential placement for a child, and that, for the sake of consistency, powers granted under those sections of the statute should be implied under the related provisions in §§ 21 and 26. Paragraph 4 of § 26 is, primarily, the means by which a parent or other interested party, including the department, may bring to a judge's at-

tention a change in the situation of a child, or of a child's parent, which might warrant reconsideration or modification of the original order adjudicating the child in need of care and protection. See *Custody of a Minor (No. 3)*, 378 Mass. 732, 734 (1979). A parent or guardian might proceed under § 26, fourth par., in the event of a disagreement with the department's manner of carrying out its custodial responsibility, but, by its terms, § 26, fourth par., provides no greater power of judicial review than is contained in § 21.

General Laws c. 119, § 29B, requires a judge to review the status of a child who has been adjudicated in need of care and protection and committed to the department's custody within eighteen months of the original commitment and periodically thereafter. The provision seeks to bring closure to individual care and protection cases, providing stability and permanence for the child whose life has been disrupted by changes in custody and residence. In § 29B, a judge is not directed to second guess the department's custodial decisions. Rather, the judge is directed to review the department's decisions in cases which remain open for eighteen months or longer, to ensure that the department's course offers a reasonable chance of a permanent placement for the child, where feasible. It is contemplated that judicial review under § 29B, in appropriate cases, may result in an order altering a child's relationship to a biological parent or other legal custodian. Thus, § 29B directs a judge to enter an order conducive to "the child's best interests." See *Care & Protection of Stephen*, 401 Mass. 144, 150 (1987) (before severing custodial relationship of child and biological parent, judge must find, by clear and convincing evidence, that severance is in "the best interests of the child"). Section 29B functions as a periodic check on the department's performance in individual care and protection cases, but it was not intended to abrogate the responsibility entrusted to the department in §§ 21 and 32, to decide the place of abode of a child committed to its custody.

Relying primarily on the opinion in *Care & Protection of Three Minors*, 392 Mass. 704 (1984), the children also argue

that this court has consistently interpreted G. L. c. 119, and, more specifically, §§ 21 and 26, as granting to the judge the authority to enter detailed and specific custodial orders even when a child is committed to the permanent custody of the department. In the *Three Minors* opinion, it was said that "[a]lthough a simple commitment order is all that is required by G. L. c. 119, § 26 . . . in this case, the judge should have given the department some guidance regarding the ultimate placement of the children and visitation by family members" (footnote omitted). *Id.* at 717.

In the *Three Minors* case, it was apparent that the department planned, in the near future, to petition the court for permission to dispense with parental consent to the adoption of the three children. The judge then would be required to evaluate the suitability of the department's proposal for the children's future. See *Adoption of Frederick*, 405 Mass. 1, 6 (1989). In the interest of efficiency, it was suggested that he should give guidance to the department relative to its custodial decisions, because it was obvious that those decisions subsequently would form the basis of the department's proposal for adoption of the children. The *Three Minors* decision did not suggest that the judge could order a particular custodial arrangement over the objection of the department. In fact, the opinion explicitly acknowledged the broad power of the department: "When the department is granted *permanent* custody of a child, it has virtually free rein to place that child in a foster home of its choosing, to decree whether, how much, and what sort of family visitation there should be . . . ." *Care & Protection of Three Minors, supra* at 718.[8]

---

[8] Both parties have brought to our attention conflicting decisional authority from other jurisdictions. As the attorney for the child notes, these decisions turn on the specific language employed in the various legislative schemes. Contrast *In re Tameka M.*, 525 Pa. 348 (1990), with *Matter of B.L.J.*, 717 P.2d 376 (Alaska 1986). Because none of these decisions construes language like that found in G. L. c. 119, §§ 21, 26, 29B and 32, we do not find them persuasive for purposes of answering the reported question.

As has been previously noted, see note 2, *supra*, a suitable long-term residential placement for Isaac has been found. It would serve no purpose to remand this case to the judge, as the child requests, for reconsideration under the proper standard of review. Nonetheless, we take this opportunity to discuss how a judge in a care and protection proceeding should handle a challenge to the department's exercise of its custodial powers. A case of this sort does not involve judicial review of an administrative decision based on evidence adduced at an adjudicatory hearing, nor does G. L. c. 119, §§ 21-37, set out standards by which to assess the reasonableness of the department's decision. In most cases, however, a substantial body of information about the child and his circumstances will exist in the form of documents and testimony adduced during the underlying care and protection proceeding. If a judge deems it necessary, he may take additional evidence, as was done in this case. The department, which is the only party in a position to do so, must produce evidence in support of its choice of a residential placement. The burden of proving that the department has failed to comply with the law or has abused its discretion would, of course, rest with the party challenging the department's custodial decisions. See *Matter of McKnight, supra* at 801-802.

In determining whether the challenged decision is "arbitrary or capricious," a judge should consider, among other factors, whether it interferes unduly with the goal of reuniting a child with his biological parents, see G. L. c. 119, § 1 (1992 ed.); whether appropriate consideration has been given to maintaining connections among siblings and other family members, see *Care & Protection of Three Minors, supra* at 715-718; and whether the department has complied with its own regulations with respect to a particular placement. The department, which has finite resources at its disposal, is entitled to consider the relative cost of alternative placement choices.

We answer the reported question, "No." The case is remanded to the Supreme Judicial Court for Suffolk County where an appropriate order shall enter.

*So ordered.*