CUSTODY OF A MINOR (NO. 2).

Norfolk. April 5, 1984. — August 13, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Minor,* Care and protection, Custody, Visitation rights. *Parent and Child,* Care and protection of minor.

In a proceeding on a petition for care and protection of a minor child brought by the Department of Public Welfare, the judge's findings, which apparently disregarded any evidence of current parental unfitness, but rather constituted an uncritical adoption of a psychologist's opinion as to the child's attachment to her foster parents, were insufficient to support his conclusion that she should be committed to the permanent custody of the department. [723-725]

In a proceeding on a petition for care and protection of a minor child brought by the Department of Public Welfare, it was improper for the judge to terminate all visitation rights of the parents without making specific findings demonstrating that parental visits would be harmful to the child or to the public welfare. [725-726]

At a trial on a petition for care and protection of a minor child at which all the witnesses were sequestered, the judge did not abuse his discretion in excluding the testimony of the child's grandmother, who was not a party to the action and who was present in the courtroom throughout the trial. [726]

PETITION filed in the East Norfolk Division of the District Court Department on March 19, 1980.

Following a claim of a trial de novo in the Northern Norfolk Division of· the District Court Department, the case was heard by *Clancy, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James M. Delaney* for the mother.

*Paul A. Lazour,* Assistant Attorney General, for Department of Social Services.

The following, for amici curiae, joined in a brief:
*Jeremy A. Stahlin,* for Boston Children's Service Association.

*Paul K. Connolly, Jr., & Margaret S. Fearey,* for Catholic Charitable Bureau of the Archdiocese of Boston, Inc.

*Alette E. Reed,* for Roxbury Children's Service, Inc.

*Gene D. Dahmen,* for Cambridge Family and Children's Service.

*Robert C. Silver,* for New England Home for Little Wanderers.

*Sally T. Owen & Herbert H. Hershfang,* for Massachusetts Society for the Prevention of Cruelty to Children.

LIACOS, J. On a petition for care and protection brought by the Department of Public Welfare (department),[1] a judge of the Dedham District Court awarded permanent custody of the minor child to the department and terminated the visitation rights of the parents. The mother[2] appealed to the Appeals Court, and it affirmed the judgment in a summary order. 17 Mass. App. Ct. 1109 (1984). We allowed the mother's application for further appellate review. Because the judgment below is unsupported by adequate findings as to the fitness of the mother, we reverse and remand for further proceedings consistent with this opinion.

We summarize the facts and proceedings from the findings and report of the trial judge, supplemented by testimony and documentary evidence in the record.[3] The child was born on April 11, 1978. On January 22, 1980, an employee of the family service unit of the office of the district attorney of Norfolk County filed a report of suspected abuse and neglect of

---

[1] Since the filing of this petition, authority for providing protective services for children and their families has been assumed by the Department of Social Services. G. L. c. 18B, inserted by St. 1978, c. 552, § 10. St. 1979, c. 795, §§ 4, 5.

[2] Before issuing his order awarding permanent custody of the child to the department, the District Court judge allowed the department's motion to dismiss the father's de novo appeal on the ground that he had failed to appear at trial. The father does not challenge this action.

[3] The report is required by G. L. c. 119, § 27, and by Rule 3 of the Interim Supplemental Rules of Appellate Procedure in Care and Protection Cases (effective January 23, 1982). Although the judge issued orders on May 25, 1982, and January 10, 1983, the report was not entered until September 9, 1983.

the child pursuant to G. L. c. 119, § 51A. According to the report, the child's mother was a battered wife, an irresponsible parent, and indifferent to her daughter's needs. The report further stated that the mother had left her husband (the father of the child) and moved in with her mother (the grandmother). The report also noted that the grandmother was disabled and thus found it difficult to care for the child.

The department assigned a social worker to the case. After conducting an investigation, the social worker reported that the mother and child had been living with the father in Florida until the father allegedly had threatened the mother with a gun.[4] The mother and child then had returned to Massachusetts and had moved in with the grandmother. The social worker also reported that the grandmother had become the child's primary caretaker, and that, according to the grandmother, the mother had no interest in her child and was unable to care for her.

The department filed a care and protection petition on March 19, 1980, in the Quincy District Court pursuant to G. L. c. 119, § 24. On March 25, 1980, the mother agreed to grant temporary custody to the department, with placement of the child with the grandmother. A few days later the father returned from Florida, and he and the mother moved into a friend's apartment. Thereafter, on April 28, 1980, the grandmother reported to the department that she had fallen and had broken her arm. As a result, she had returned the child to the parents.

The department immediately took the child from the parents and placed her in a foster home. Although the parents and the grandmother lived in Weymouth, the department placed the child with a foster family in Framingham. This placement made it difficult for the mother to visit the child because she had to depend on public transportation or use of the grand-mother's automobile to travel to Framingham. She visited the

---

[4] The judge did not make a finding as to whether the father actually threatened the mother with a gun.

child fourteen times between April 28, 1980, and January 19, 1981, the date of trial.[5]

After the trial the judge continued the case without a finding, and the parents began to visit the child at least once a week. Eventually, the child was spending three or four nights a week with her parents. In May, 1981, a second child was born to the parents, and in June they were evicted from their apartment. The department reacted to these events by reducing the frequency of the child's visits. On July 17, 1981, the judge granted permanent custody of the child to the department.

The parents exercised their right to claim a de novo trial pursuant to G. L. c. 119, § 27.[6] Subsequently, the visits to the child became somewhat sporadic. The parents missed one visit, the department cancelled two visits, and the child was not at the foster home when the parents came to take her for the weekend. Eventually, the department ceased to allow overnight visits, claiming that on one occasion the parents had returned the child to the foster family two days late.

On May 25, 1982, following the de novo trial, the judge committed the child to the permanent custody of the department and terminated the parents' visitation rights. Subsequently, the judge allowed the mother's motion to stay the order terminating visitation pending appeal. In December, the department moved to revoke the stay and to terminate visitation on the ground that the child was having temper tantrums in order to avoid visiting her parents. The judge allowed the motion and terminated all parental visitation on January 10, 1983.

In his findings accompanying the May 25 order, the judge found that the child's father had "a long history of unemployment, irresponsibility and alcoholism," and that the parents were frequently evicted from their apartments because of the father's unwillingness to work. The judge further found that

---

[5] The delay between the filing of the petition on March 19, 1980, and the trial date was caused by several continuances, some of which were requested by the department, others by the parents, and, on occasion, due to the unavailability of attorneys or of the judge.

[6] The Legislature has since eliminated the right to a de novo trial which was provided for in G. L. c. 119, § 27. St. 1981, c. 715, § 1.

when the child was born the mother "lacked the maturity, intuition and self esteem . . . to handle the role of parent while attempting to preserve an almost impossible marriage." The judge also found that two social workers from the department "attempted to solve [the mother's] problems by making demands beyond her capacity [and] [a]t no time did they demonstrate sensitivity or compassion." The judge noted that the mother and child "needed help and understanding." He observed that "since the birth of her second child, [the mother] has demonstrated positive parenting skills [that] were developed during this long and unnecessary battle for custody of [the child]." The judge then adopted the opinion of a psychologist who testified at the trial that the child had become psychologically bonded to the foster family. The judge concluded that the best interests of the child therefore required that she remain with the foster family.

Seven months later in supplementary findings issued in conjunction with the final order terminating visitation, the judge found that "[t]he mother is again living with the child's father who failed to appear in court during the prolonged hearings. The evidence is clear and convincing that he is an improper person to have custody of the child and that his influence on the mother contributes to her unfitness to have custody of the child." He further found that the child was suffering from the protracted custody dispute, and that the visits from the mother and grandmother contributed to the child's suffering.

The mother claims that the judge's findings are not supported by the evidence. She also contends that the findings are not sufficient to support the judge's orders granting permanent custody to the department and terminating her visitation rights.

After careful review of the record, we have determined that the judge's findings do not support his conclusions and order.[7] The record also indicates that the judge erroneously presumed that he was restricted to considering only evidence relating to the best interests of the child. He therefore apparently disregarded any evidence of current parental fitness.

---

[7] In view of this determination, we need not reach the question whether the findings are supported by the evidence.

We have held previously that "parental unfitness must be persuasively shown in order to justify removal of a child from the custody of its parent." *Custody of a Minor,* 389 Mass. 755, 765 (1983). "Because the interest of the child is thought to be best served in the stable, continuous environment of his own family, . . . State intervention in the parent-child relationship is justified only when parents appear unable to provide for their children's care and protection" (citations omitted). *Custody of a Minor (No. 1),* 377 Mass. 876, 882 (1979). We have stated that a judge must find that the parent is unfit at the time of trial before granting permanent custody to the department. *Id.* at 880. "[T]he critical inquiry is 'current parental [fitness].'" *Bezio* v. *Patenaude,* 381 Mass. 563, 577 (1980), quoting *Custody of a Minor (No. 1), supra* at 883.

In this case, the judgment allowing the department's petition was not supported by a finding of parental unfitness. On the contrary, the judge specifically found that the mother was exhibiting "positive parenting skills" at the time of the trial. His sole reference to the mother's unfitness is located in findings which he made seven months after the order awarding custody to the department. In those findings, issued in conjunction with the order terminating visitation rights, the judge stated that the father's "influence on the mother contributes to her unfitness to have custody of the child."

Rather than focusing on parental unfitness, the order granting permanent custody to the department appears to be based entirely on the finding that the child had psychologically bonded to the foster parents. We have not, however, adopted "a per se rule that prospective adoptive foster parents, who have become a minor child's psychological parents, shall automatically prevail in a custody dispute over a natural parent." *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 391 Mass. 113, 118 (1984), quoting *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 573, 591 n.16 (1981). See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, ante* 696, 700 (1984). Nevertheless, we acknowledge that "the lengthy separation of a mother and child and a corresponding growth in the

ties between the child and a different custodian may in some circumstances indicate that the forced return of the child to the mother would be seriously detrimental to the child, with the result that the mother should be deemed not fit to care for the child." *Custody of a Minor, supra* at 768. *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption,* 367 Mass. 631, 639 (1975).

The judge failed, however, to make specific and detailed findings regarding the psychological effect of returning the child to the custody of her parents. His wholesale adoption of the psychologist's opinions and findings is entirely insufficient. We have stated previously that "[w]holesale incorporation of [a] psychiatrist's testimony in the absence of specific and detailed findings by the judge makes it impossible for us to ascertain whether the judge has given close attention to the evidence and arrived at an independent judgment based upon that evidence, or whether the judge is simply rubberstamping the conclusion of the expert witness." *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, supra* at 593. A judge is required to exercise utmost care in custody proceedings and must make "specific and detailed findings demonstrating that close attention has been given the evidence and that the necessity of removing the child from his or her parents has been persuasively shown." *Custody of a Minor (No. 2),* 378 Mass. 712, 721 (1979), quoting *Custody of a Minor (No. 1),* 377 Mass. 876, 886 (1979). We also note that a finding of parental unfitness must be based on clear and convincing evidence in care and protection cases, as well as in cases involving petitions to dispense with parental consent to adoption. See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, supra* at 698 n.1. *Care & Protection of Three Minors, ante* 704, 711-712 (1984). *Custody of a Minor, supra* at 766. See *Santosky* v. *Kramer,* 455 U.S. 745, 769-770 (1982).

We next turn to the mother's contention that her visitation rights were improperly terminated. When the department obtains custody of a child, it also has the power to control visits to the child. G. L. c. 119, § 21. That power is modified, how-

ever, by G. L. c. 119, § 35, as appearing in St. 1954, c. 646, § 1, which gives the parents the right to visit their children if "the welfare of the child and the public interest will not be injured." See *Custody of a Minor (No. 1), supra* at 884 n.7. The termination of all visitation rights by a parent is a ruling of such significance to the parties that we conclude that the same standards which apply to permanent custody decisions should apply to such a ruling. Thus, before terminating visitation rights, a judge must make specific findings demonstrating that parental visits will harm the child or the public welfare. *Care & Protection of Three Minors, supra* at 718. Cf. *Custody of a Minor,* 389 Mass. 755, 767 (1983). See G. L. c. 119, § 35. Those findings are not present in this case.

The mother also argues that the grandmother was improperly prevented from testifying at trial. The judge, on a motion of the mother's attorney, ordered that all the witnesses be sequestered. The grandmother, who is not a party to the action, was present in the courtroom throughout the trial. It was, therefore, clearly within the judge's discretion to exclude her testimony. *Commonwealth* v. *Crowley,* 168 Mass. 121, 128 (1897). The mother's remaining contentions are equally without merit.[8]

---

[8] The mother also challenges the constitutionality of G. L. c. 119, §§ 1-39, 51A, arguing that it creates a conflict of interest in the department by directing the department to strengthen and encourage family life and concurrently authorizing the department to petition for custody of a child in a care and protection proceeding. We need not consider this argument because it was raised for the first time on appeal. *Petition of the Dep' t of Social Servs. to Dispense with Consent to Adoption, supra* at 697. We also note that G. L. c. 119, §§ 2-20, 30-31, have been repealed. St. 1972, c. 785, § 6. St. 1961, c. 396, § 5.

The mother's attorney also complains that the clerk of the Dedham District Court took the position that a review and redetermination of the current needs of the child pursuant to G. L. c. 119, § 26, was inappropriate while appeal of this case was pending. While this issue is not before us because no motion for a review and redetermination was ever made to the court, the department's position is that aggrieved parents can avail themselves of review under G. L. c. 119, § 26, regardless of a pending appeal. We think it appropriate to indicate that we seriously question whether the bringing of an appeal in a care and protection case precludes the parents from being heard on a petition for review and redetermination, as provided for in G. L. c. 119, § 26, pending the appeal. This view is consistent with the need to

Because, as discussed, the judge's findings and the record do not indicate that he properly considered the fitness of the parent, the judgment is vacated, and the case is remanded to the District Court for further proceedings. As a substantial period of time has passed since the last hearing in this matter, and since the parties' circumstances may have changed as a result, the parties must be given an opportunity to present new evidence. *Custody of a Minor, supra* at 769-770. Furthermore, on a petition from the mother, the judge should reinstate her visitation rights unless it is demonstrated that such visitation will injure the welfare of the child.[9]

*So ordered.*

preclude legal technicalities from acting as a barrier to the prompt and fair disposition of cases involving children. See *Custody of a Minor, supra* at 764 n.2.

[9] We acknowledge with gratitude the help given in our consideration of this appeal by the amicus curiae brief of Boston Children's Service Association; Cambridge Family and Children's Service; Catholic Charitable Bureau of the Archdiosese of Boston, Inc.; Massachusetts Society for the Prevention of Cruelty to Children; New England Home for Little Wanderers; and Roxbury Children's Service, Inc.