THADDEUS vs. SECRETARY OF THE EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES, 101 Mass. App. Ct. 413

 
 THADDEUS [Note 1] & others [Note 2] vs. SECRETARY OF THE EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES & another. [Note 3]

101 Mass. App. Ct. 413
 April 5, 2022 - July 20, 2022

Court Below: Superior Court, Suffolk County
Present: Meade, Englander, & Grant, JJ.

 

No. 21-P-398.

Department of Children & Families. Minor, Visitation rights, Care and protection. Parent and Child, Care and protection of minor. Due Process of Law, Care and protection of minor. Moot Question.

This court exercised its discretion to reach a challenge to an interim policy adopted by the Department of Children and Families (department) during the first several months of the COVID-19 pandemic, limiting in-person visitation between parents and their children in department custody and instead requiring, in most cases, "virtual visitation" by video conference, where, although the plaintiffs had ceased to have an ongoing personal stake in the controversy, the issue was of public importance, persisted for other parents with children in department custody, and was likely to evade appellate review in the future. [417-419]

In a civil action challenging an interim policy adopted by the Department of Children and Families (department) during the COVID-19 pandemic, the Superior Court judge did not err in denying the defendants' motion to dismiss based on the pendency of prior actions in the Juvenile Court, where the issues raised in the Juvenile Court actions were not the same as those raised in the Superior Court action, in that in the underlying Juvenile Court actions, the plaintiffs sought reinstatement of in-person visitation as an interim measure while their care and protection claims were pending, whereas in the Superior Court action, the plaintiffs sought a declaration that the department's practices restricting in-person visitation were unlawful under statutory and constitutional law. [419-420]

An interim policy adopted by the Department of Children and Families (department) during the first several months of the COVID-19 pandemic, limiting in-person visitation between parents and their children in department custody and instead requiring, in most cases, "virtual visitation" by video conference, did not terminate the rights of the plaintiffs, who had children in department custody at the time the policy was implemented, to visit their children within the meaning of G. L. c. 119, § 35, where the plaintiffs' right to visit with their 

 Page 414 

children was not absolute, and where the department's discretion to control visits included the ability to direct that visitation take place virtually in circumstances in which in-person contact posed a significant health risk to parents, children, and the various adults who enabled such contact [420-424]; further, principles of due process did not entitle the plaintiffs to a predeprivation hearing before the department halted in-person visitation, where the private liberty interest at stake was limited, where the plaintiffs had available to them care and protections actions in the Juvenile Court in which they could have challenged the change to virtual visitation, and where the government's interest in temporarily changing to virtual visitation was very strong, as was its interest in doing so quickly [424-426].

Civil action commenced in the Superior Court Department on May 29, 2020. 

 A motion to dismiss was heard by Michael P. Doolin, J., and the case was reported by him.

 Katherine B. Dirks, Assistant Attorney General (Jesse M. Boodoo, Assistant Attorney General, also present) for the defendants.

 Lauren E. Russell, Committee for Public Counsel Services (Ann Balmelli O'Connor, Committee for Public Counsel Services, also present) for the plaintiffs.

 ENGLANDER, J. The plaintiffs challenge a policy adopted by the Department of Children and Families (department) during the first several months of the COVID-19 pandemic, which limited in-person visitation between parents and their children in department custody, instead requiring (in most cases) video conferences or "virtual visitation." The plaintiffs are six parents whose children were subject to care and protection proceedings and in department custody when the pandemic began, as well as one similarly situated child. The plaintiffs claim that they have statutory and constitutional rights to parent-child visits in person, and that the department violated those rights by implementing its virtual visitation policy and by not first obtaining a court order. In proceedings in the Superior Court, a first judge denied the plaintiffs' request for a preliminary injunction, but then a second judge (motion judge) declined to dismiss the case, ruling (1) that the claims presented "need not be dismissed for mootness"; (2) that Mass. R. Civ. P. 12 (b) (9), as amended, 450 Mass. 1403 (2008), did not require dismissal; and (3) that the plaintiffs had stated claims that survived scrutiny under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). In response to a joint motion by the parties, the motion judge then reported his order to this court, 

 Page 415 

under Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996). [Note 4] 

 For the reasons that follow, we reach the merits of the plaintiffs' claims, and rule that those claims fail as a matter of law. While visits between parents and children in department custody must ordinarily be in person, the circumstances in the spring of 2020 were far from ordinary. It was within the department's discretion to adopt a policy, for that time, that favored parental contact by video conference and sharply limited in-person visits. Nor, under the circumstances, was the department required to secure court approval in advance. We accordingly remand the matter with directions to dismiss the case.

 Background. As indicated, the plaintiffs in this action are parents, and one child, who were involved in care and protection proceedings in the Juvenile Court when the pandemic began. All of the children at issue were in department custody and attending in-person visits with their parents at that time. 

 In March of 2020, the department ended in-person visitation for all plaintiffs. In early April, the department issued "Interim Guidance for DCF Supervised Visitation Providers" and "Guidelines for Parent-Child Visitation During COVID-19 Outbreak" (collectively, interim policy). The interim policy stated:

"The novel coronavirus, COVID-19, poses an unprecedented challenge to the day-to-day operations of the [department] and the children and families we serve. In order to mitigate the spread of COVID-19 during this state of emergency, we will need to be innovative in the ways parents and children can maintain contact and connection with one another, while limiting in-person interactions as much as possible." 

The interim policy accordingly "encourag[ed] video conference visitation for parents and children whenever possible," and stated that in-person visits would occur only if "needed," and if approved by department supervisors or managers. The interim policy also identified precautionary measures that the department should follow in the event of such in-person visitation. 

 After the department ceased in-person visitation for all the plaintiffs in March of 2020, several plaintiffs submitted requests 

 Page 416 

to the department to reinstate in-person visitation; the department denied their requests. Two parents also sought relief, separately, in the Juvenile Court, but the Juvenile Court judges also declined to reinstate in-person visitation. 

 On May 29, 2020, the plaintiffs commenced this action in the Superior Court, asserting two causes of action: one statutory and one constitutional. The first cause of action alleged that the department had "terminated" the plaintiffs' visitation, in violation of G. L. c. 119, § 35. The second alleged that the department had violated the plaintiffs' due process rights by denying them visitation without first obtaining a court order. The plaintiffs also filed a motion for injunctive relief, which a Superior Court judge denied in June of 2020. 

 In late June 2020, the department amended its policy to "provide guidelines to safely resume in-person Family Time for children" in its custody (amended policy). While it approved the resumption of in-person family time, the amended policy also stated that "Virtual Family Time can support and supplement in-person Family Time and is encouraged when in-person Family Time cannot occur." [Note 5] In-person visitation had resumed for all plaintiffs by August of 2020. 

 In September of 2020 the defendants moved to dismiss, arguing that (1) the complaint was moot because the interim policy had been superseded and in-person visitation had resumed, (2) the complaint should be dismissed pursuant to rule 12 (b) (9) because the plaintiffs had pending care and protection proceedings before the Juvenile Court, and (3) the plaintiffs had failed to state a claim. The motion judge denied the motion. As to mootness, he reasoned that "the issue . . . may be repeated in regard to either these Plaintiffs in the future or any individuals engaged with the Department." He also ruled that dismissal was not required under rule 12 (b) (9), and that the complaint sufficiently stated a claim upon which relief could be granted. 

 Upon joint motion of the parties, the motion judge reported his decision to this court under rule 64. On appeal, the defendants filed affidavits with this court averring that, although some of the plaintiffs were still subject to ongoing care and protection proceedings, all plaintiffs had been reunited with their respective 

 Page 417 

child or parent, or parental rights had been terminated, [Note 6] such that visitation rights were no longer an issue. In response, the plaintiffs filed affidavits from attorneys for the Committee for Public Counsel Services (CPCS) averring that the department continued to limit some CPCS clients (not the plaintiffs) to virtual contact with their children. The CPCS attorneys noted that the department had not sought a court order to authorize this virtual contact, and that in these instances the department had imposed virtual contact for reasons unrelated to the pandemic. 

 Discussion. 1. Mootness. The defendants first argue that this appeal should be dismissed as moot. We agree that the case likely is moot as to these seven plaintiffs, but we nevertheless exercise our discretion to consider the issues raised.

 A case is moot when the party seeking relief "ceases to have a personal stake" in the case, such that the "court can order no further effective relief" (quotations and citations omitted). Branch v. Commonwealth Employment Relations Bd., 481 Mass. 810, 816-817 (2019), cert. denied, 140 S. Ct. 858 (2020). Here, none of the plaintiffs require visitation any longer. Moreover, the interim policy is no longer in effect. [Note 7] While it is true that several of the plaintiffs have ongoing care and protection cases, where the subject children have been returned to the care of their parents the suggestion that remote visitation may be imposed on these particular plaintiffs in the future is tenuous, and likely not sufficient in itself to create a concrete dispute. [Note 8] And mere disagreement over the scope of the department's authority -- without an ongoing personal stake in the controversy -- is not enough to survive a mootness challenge. See Lynn v. Murrell, 489 Mass. 579, 583 (2022) (recognizing mootness of dispute over validity of rescinded emergency COVID-19 orders). 

 Mootness, however, is not a jurisdictional bar in our courts. See 

 Page 418 

Lynn, 489 Mass. at 583. We may exercise our discretion to consider a moot case upon consideration whether

"(1) the issue was fully argued on both sides; (2) the question was certain, or at least very likely, to arise again in similar factual circumstances; (3) where appellate review could not be obtained before the recurring question would again be moot; and (4) most importantly, the issue was of public importance." 

Ott v. Boston Edison Co., 413 Mass. 680, 683 (1992). Here, the issue has been briefed, and ably argued, by both sides. Furthermore, the issue -- the department's ability to limit parents' contact with children in department custody solely to virtual means -- is one of public importance.

 Thus, we turn next to whether this issue is likely to arise again in similar circumstances. The defendants argue that the department is unlikely again to substitute virtual contact for in-person visitation, given public health advancements and the declared end to the COVID-19 state of emergency. But while we acknowledge that the department is unlikely to reinstate the interim policy exactly as written, the issue whether the department may lawfully limit contact to virtual contact persists for other parents with children in department custody, now and in the future. The plaintiffs have submitted affidavits indicating that the department continues to restrict some families solely to virtual contact for reasons unrelated to the pandemic, such as geographic distance or lack of available staff. The defendants counter that such actions are contrary to department policy, and can be addressed in pending individual proceedings in the Juvenile Court; the defendants, however, do not deny that such actions are occurring. 

 Furthermore, the question of the lawfulness of virtual visitation is likely to evade appellate review in the future, as this case illustrates. Visitation issues -- and other temporary custody matters in care and protection proceedings -- generally will be resolved by the time the matter is heard on appeal. [Note 9] In recognition of this practical reality, the Supreme Judicial Court has previously opted to consider moot issues in similar contexts. See Care & 

 Page 419 

Protection of Walt, 478 Mass. 212, 219 (2017) (considering moot issues regarding seventy-two hour hearings); Guardianship of V.V., 470 Mass. 590, 592 (2015) ("given the short time periods in which guardianship matters are often decided and the fluidity of the proceedings even after an appointment of a guardian . . . , it is an issue that can easily evade appellate review in the ordinary course"). 

 2. Rule 12 (b) (9). The defendants next argue that the plaintiffs' claims should be dismissed pursuant to rule 12 (b) (9), because the plaintiffs had ongoing care and protection proceedings in the Juvenile Court. Again, we disagree.

 Rule 12 (b) (9) allows defendants to seek dismissal due to the "[p]endency of a prior action in a court of the Commonwealth." The purpose of rule 12 (b) (9) is to concentrate the adjudication of a claim or "action" in a single court, and to prevent parties from "claim-splitting," or pursuing the same claims in two separate actions. Lyons v. Duncan, 81 Mass. App. Ct. 766, 770-771 (2012). For a rule 12 (b) (9) defense to succeed, "the parties and the issues [must be] the same as those in a prior action still pending." Lyons, supra. Here, it is true that there were previously pending care and protection cases, in the Juvenile Court, that were addressing the issue of custody of the children. That court was available to adjudicate the rights of individual parents to visit with their children in department custody.

 Our inquiry, however, does not end there. Consideration whether the same issues were raised in the Juvenile Court and Superior Court requires a closer examination of the nature of the claims asserted and the relief sought in each action. In the underlying Juvenile Court proceedings, some plaintiffs sought reinstatement of in-person visitation, as an interim measure while the care and protection claims were pending. The Superior Court action, on the other hand, does not seek merely to reinstate in-person visitation, but broadly seeks a declaration that the department's practices restricting in-person visitation were and are unlawful under statutory and constitutional law. 

 The Superior Court action thus is different in nature, raises distinct claims, and seeks distinct remedies from those involved in the individual care and protection proceedings. We need not decide whether the plaintiffs could have raised some of their Superior Court claims in the care and protection proceedings (indeed, we assume they could have), as they could not have raised all of them. See Gold Star Homes, LLC v. Darbouze, 

 Page 420 

 89 Mass. App. Ct. 374, 377-378 (2016) (permitting second action in Housing Court because summary process counterclaim not available in Land Court); Conant v. Sherwin L. Kantrovitz, P.C., 29 Mass. App. Ct. 998, 999 (1990) (permitting second action in Boston Municipal Court because Probate and Family Court had no jurisdiction over contract claim). As one example, the Juvenile Court does not have jurisdiction to grant the declaratory judgment that the plaintiffs now seek. [Note 10] See G. L. c. 231A, § 1. The judge did not err by denying the defendants' rule 12 (b) (9) motion.

 3. The interim policy. Turning to the merits, we consider whether the plaintiffs' complaint has stated a viable claim for relief. The questions before us are whether the department may limit in-person visitation for children in its custody, even temporarily, and if so, what limitations may or may not exist on the department's power to do so. We review a decision on a motion to dismiss de novo. See Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 164 (2014). A complaint must contain "factual allegations plausibly suggesting . . . an entitlement to relief" (quotation and citation omitted). Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). The plaintiffs have failed to state such a claim.

 a. Section 35 claim. The plaintiffs first argue that pursuant to G. L. c. 119, § 35, they are entitled to "visit[]" with their children, and that the department "terminated" their visitation rights when it shifted to virtual visitation in March of 2020. The basic premise of the plaintiffs' position is that "visit" means in-person contact between parent and child; virtual visitation, by video conference or similar means, thus does not satisfy their statutory rights. For its part, the department contends that the plaintiffs' rights (whatever their scope) do not mandate in-person visitation, and in any event, certainly do not mandate in-person visitation during a worldwide pandemic. 

 Our analysis accordingly must begin by defining the statutory 

 Page 421 

right at issue. As to each of the plaintiffs, a judge has already granted custody to the department through an existing care and protection proceeding. Under G. L. c. 119, § 21, "[c]ustody" is a defined term that carries with it a list of powers, including the power to "control visits to a child." Accordingly, it is clear that whatever visitation right a parent retains under such circumstances, that right is not absolute. The department "control[s]" such visits, which must include the power to determine, reasonably, the time, place, manner, and frequency of such visits.

 Parents' rights to visit with their children while in department custody were recognized by the Supreme Judicial Court in Custody of a Minor (No. 2), 392 Mass. 719, 725-726 (1984). In that case a judge had granted the department permanent custody of a child, and thereafter had terminated the parents' visitation rights. See id. at 720. The court held that the department's power to control visits was "modified" by G. L. c. 119, § 35, which the court read to grant "parents the right to visit their children if 'the welfare of the child and the public interest will not be injured'" [Note 11] (citation omitted). Id. at 725-726. The court went on to note that "termination of all visitation rights" was "a ruling of such significance" that, before doing so, a judge must "make specific findings demonstrating that parental visits will harm the child or the public welfare." Id. at 726.

 In short, a parent has a (qualified) right to "visit" with his or her child, and the department has the power to control those visits. Visitations cannot be "terminated" without a specific finding by a judge. The issue presented here, however, is whether the right to "visit" means in-person contact, regardless of the circumstances. The plaintiffs urge that it does. They begin with plain language; the word "visit," they point out, is defined as "a short stay (as for sociability or friendship) that is usu[ally] longer than a social call" or "a journey to and stay or short sojourn at a place for a particular purpose." Webster's Third New International Dictionary 2557 (1993). And the plaintiffs back their plain language interpretation by pointing out that in-person contact between parent and child is indeed different from remote contact by video 

 Page 422 

-- actual physical presence and contact confer benefits that virtual contact cannot. "Visitation, like custody, is at the core of a parent's relationship with a child; being physically present in a child's life, sharing time and experiences, and providing personal support are among the most intimate aspects of a parent-child relationship" (emphasis added). Care & Protection of Walt, 478 Mass. at 229, quoting L.B. v. Chief Justice of the Probate & Family Court Dep't, 474 Mass. 231, 242 (2016). 

 We agree that under the statute and case law the presumptive rule -- indeed, the strong presumption -- is that visits between a parent and a child in department custody are to be in person. The statutory goal is to reunite the family, see Care & Protection of Rashida, 488 Mass. 217, 228 (2021), and in-person visitation is important to that goal. We expect this would be true in particular for younger children -- infants and toddlers. The department concedes this importance, and the presumption of in-person contact is in the department's current policy. See note 5, supra ("Virtual Family Time can supplement, but should not replace, in-person visits").

 Just as a parent's right to visit is not absolute, however, so too the right to visit in person is not absolute. The word "visit" need not be read as rigidly as the plaintiffs contend, and it is clear that the visitation right is and must be subject to adjustment for temporary, unusual, or extraordinary circumstances, in the reasonable discretion of the department. For example, the department may of course temporarily cancel or reschedule visits due to a variety of logistical issues -- for example, temporary unavailability of case workers, transportation, or a location to meet. The department can also restrict the duration or frequency of the parent-child visits if the visits have a negative impact on the child. See Adoption of Darlene, 99 Mass. App. Ct. 696, 701 (2021). And if a parent poses safety risks to the child, the department may require visitation to be supervised, or temporarily suspend visitation. See Adoption of Xarissa, 99 Mass. App. Ct. 610, 614 (2021); Adoption of Imelda, 72 Mass. App. Ct. 354, 358 (2008). Contrast Adoption of Franklin, 99 Mass. App. Ct. 787, 795-796 & n.14 (2021) (cessation of visits between child and incarcerated father for at least seven months constituted termination). Such temporary and reasonable restrictions on the time, place, manner, and frequency of visitation do not constitute a termination, are within the department's discretion, and do not require that the 

 Page 423 

department obtain a court order in advance. [Note 12]

 It follows that the department's discretion to control visits must also include the ability to direct that visitation take place virtually where, as here, in-person contact posed a significant health risk not only to the child and the parents, but also to the various adults (foster parents, guardians, social workers, and the like) who must enable such contact. In the spring of 2020 we were all urged by our government to stay home, not to travel, and to minimize all in-person contact, because in-person contact facilitated the transmission of a deadly disease. See Desrosiers v. Governor, 486 Mass. 369, 373-374 (2020), cert. denied, 142 S. Ct. 83 (2021); Order Assuring Continued Operation of Essential Services in the Commonwealth, Closing Certain Workplaces, and Prohibiting Gatherings of More Than 10 People, COVID-19 Order No. 13 (Mar. 23, 2020). It is difficult to imagine a better reason to restrict, temporarily and subject to the exercise of reasonable discretion, in-person contact between parent and child. As the Supreme Judicial Court has noted, G. L. c. 119, § 35, "gives the parents the right to visit their children," but that right is conditioned on whether "the welfare of the child and the public interest will not be injured" (citation omitted). Custody of a Minor (No. 2), 392 Mass. at 726.

 The plaintiffs do not separately contest the reasonableness of the department's interim policy (as opposed to the department's authority to adopt it), but it is worth noting that in light of the circumstances, any such challenge would fail. In Care & Protection of Isaac, 419 Mass. 602, 603-604 (1995), the Supreme Judicial Court addressed the challenge of a child, then in the department's permanent custody, to the department's choice of school for him. In rejecting the child's challenge, the court emphasized that placement decisions by the department are within its broad discretion, and that absent clear law to the contrary, "the courts normally have no right to tell that agency how to fulfil its obligation." Id. at 606. See Care & Protection of Jeremy, 419 Mass. 616, 618 (1995). Similarly, the department "has discretionary authority regarding which particular services to recommend, and how those services shall be provided." Care & Protection of Rashida, 488 Mass. at 229. Our review of such agency determinations is for legal error or abuse of discretion. 

 Page 424 

See Care & Protection of Isaac, supra at 611. For the reasons discussed above, there was no legal error in determining, under the circumstances, that visits would take place virtually. Nor was there abuse of discretion by the department in adopting its temporary, tailored policy, which was based on then-existing public health knowledge. 

 The plaintiffs urge, nevertheless, that the department was precluded by law from implementing its interim policy because the department needed to secure a court order in advance. The premise of this argument is that implementation of the department's interim policy "terminated" the plaintiffs' visitation rights, such that Custody of a Minor (No. 2), 392 Mass. at 726, required a court order, and findings, in advance. For the reasons discussed above, we do not agree that virtual visitation did not satisfy the right to "visit" recognized by the Supreme Judicial Court, under the circumstances here. Moreover, whether a particular change in visitation is sufficiently lengthy to constitute a termination must be viewed in light of all the circumstances, [Note 13] and here the suspension of in-person visitation was plainly intended to be impermanent, although its duration could not be known in advance. The policy was characterized as "[i]nterim [g]uidance," and explicitly tied its duration to the state of emergency caused by the pandemic -- "[i]n order to mitigate the spread of COVID-19 during this state of emergency, we will need to . . . limit[] in-person interactions as much as possible" (emphasis added). In short, the interim policy was a temporary measure to address safety concerns caused by the COVID-19 pandemic, not a termination of the plaintiffs' visitation rights. 

 b. Procedural due process. What we have said above largely disposes of the plaintiffs' procedural due process claims as well. The plaintiffs argue that due process entitled them to a "pre-deprivation" hearing before the department halted in-person visitation. [Note 14] Procedural due process requires at least the "opportunity to be heard at a meaningful time and in a meaningful manner" 

 Page 425 

(quotation and citation omitted). Mathews v. Eldridge, 424 U.S. 319, 333 (1976). In evaluating what process is due, we consider and balance (1) the private interest at stake, (2) the risk of improper deprivation and the probable value of additional procedural safeguards, and (3) the government's interest. See id. at 335; Care & Protection of Robert, 408 Mass. 52, 59 (1990). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands" (citation omitted). Doe, Sex Offender Registry Bd. No. 1 v. Sex Offender Registry Bd., 79 Mass. App. Ct. 683, 692 (2011). Under the circumstances, due process did not require the department to obtain a court order before suspending in-person visitation during the COVID-19 pandemic.

 To begin, the private liberty interest at stake is limited -- it is the parents' right to visit with their child in person, after the child has been removed from their custody. The plaintiffs' claim accordingly is not about parents' rights to live with their child, or to control their child's upbringing, see Department of Pub. Welfare v. J.K.B., 379 Mass. 1, 3 (1979); those rights have shifted to the department, at least temporarily, and no parent suggests that they were deprived of due process in connection with the change in custody itself. Similarly, the plaintiffs are not complaining that they were deprived of this limited liberty interest without any due process; they concede that the courts were available -- indeed, the Juvenile Court cases were already pending -- through which they could challenge the change to remote visits. The plaintiffs' claim, accordingly, is only that they were deprived of "pre-deprivation" process. 

 On the other side of the coin, and as we have already discussed, the government interest in temporarily changing to virtual visits was very strong, as was the government's interest in doing so quickly, rather than waiting to secure a court order in advance. See Vazquez Diaz v. Commonwealth, 487 Mass. 336, 343 (2021). As courts have recognized in many other contexts, at times government must act quickly; it sometimes lacks the luxury of time. See Gilbert v. Homar, 520 U.S. 924, 930 (1997) ("where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies 

 Page 426 

the requirements of the Due Process Clause"). The Commonwealth also traditionally has "great leeway in adopting summary procedures to protect health and safety" (citation omitted). Chief of Police of Worcester v. Holden, 470 Mass. 845, 861 (2015) (no predeprivation process required when revoking gun license). These were such circumstances, and the plaintiffs do not contend otherwise. Due process is a flexible concept, and that includes the flexibility for the government to act in a crisis without first going to court, and to provide adequate postdeprivation process thereafter. [Note 15] See Gilbert, supra.

 The order denying the defendants' motion to dismiss is reversed, and the case is remanded for further proceedings consistent with this opinion. 

 So ordered. 

FOOTNOTES
[Note 1] By his next friend. Thaddeus is a pseudonym. 

[Note 2] Six parents whose children were in the custody of the Department of Children and Families. 

[Note 3] Commissioner of the Department of Children and Families. 

[Note 4] "[W]here a Superior Court judge does take action on a motion to dismiss, the report need only present the question of the propriety of the action taken . . . [and] need not formulate and report any other specific questions." Heck v. Commonwealth, 397 Mass. 336, 338 n.6 (1986). 

[Note 5] The amended policy has been updated several times since June 2020. The most recent iteration (current policy) states that "Virtual Family Time can supplement, but should not replace, in-person visits." 

[Note 6] We may consider affidavits filed on appeal to determine whether a case has become moot. See Branch v. Commonwealth Employment Relations Bd., 481 Mass. 810, 817 n.13 (2019), cert. denied, 140 S. Ct. 858 (2020). 

[Note 7] The plaintiffs and the defendants agree -- albeit for different reasons -- that the so-called voluntary cessation doctrine, as described in Cantell v. Commissioner of Correction, 475 Mass. 745, 753 (2016), is inapplicable here, so we do not address the issue. 

[Note 8] The authorities that the plaintiffs cite for the contrary proposition involved class actions -- in which other members of the class continued to have a personal stake in the litigation. See Cantell, 475 Mass. at 753-754; Santana v. Registrars of Voters of Worcester, 384 Mass. 487, 493 (1981), S.C., 390 Mass. 353 (1983). 

[Note 9] The question of "evading review" refers to evading appellate review. See Care & Protection of Walt, 478 Mass. 212, 219 (2017) (considering whether issues "might otherwise evade appellate review"). Whether the plaintiffs have access to trial court or administrative review is not the touchstone of our mootness analysis. 

[Note 10] The department argues that the Superior Court lacks jurisdiction over the plaintiffs' claims because the Juvenile Court "has exclusive original jurisdiction over care and protection proceedings . . . , as well as most custodial matters incident to such proceedings." We disagree that the Juvenile Court has been granted jurisdiction over the claims in this case, to the exclusion of the Superior Court. See G. L. c. 218, § 59 (Superior Court and Juvenile Court have concurrent equity jurisdiction over care and protection proceedings). As discussed supra, the claims at issue here defy the label "care and protection proceedings," as they raise issues going beyond the custody and visitation rights as to a particular child. 

[Note 11] The language of the statute itself is more limited and states, in part, that "the probate court . . . may, upon petition of such parent, guardian or next of kin, and upon notice, if in its opinion the welfare of the child and the public interest will not be injured thereby, require [the] department . . . to . . . permit the parent, guardian or next of kin to visit the child at such times and under such conditions as the court orders." G. L. c. 119, § 35. 

[Note 12] Such decisions by the department may be challenged through a so-called abuse of discretion motion. See Care & Protection of Rashida, 488 Mass. at 222. 

[Note 13] There is no bright-line rule that defines when a suspension becomes a termination, and we decline to establish such a rule. Cf. Adoption of Linus, 73 Mass. App. Ct. 815, 817 (2009) (eighteen-month and five-month suspensions required court orders in advance); Adoption of Rhona, 57 Mass. App. Ct. 479, 490 (2003) (twenty-month suspension required court order in advance). 

[Note 14] The complaint is not entirely clear as to whether it is invoking procedural due process rights under the Federal Constitution, as well as the Massachusetts Declaration of Rights. The complaint largely references the State Constitution, but also cites Federal case law. In any event, our courts have not drawn a distinction between the constitutional due process rights in this area. See 

Liability Investigative Fund Effort v. Massachusetts Med. Professional Ins. Ass'n, 418 Mass. 436, 443, cert. denied, 513 U.S. 1058 (1994); Care & Protection of Robert, 408 Mass. 52, 58-59 (1990).

[Note 15] We note that there are several procedural safeguards in place to protect the plaintiffs from erroneous deprivation of their visitation rights. In care and protection proceedings a parent may file a motion at any time challenging the department's visitation practices. See Care & Protection of Rashida, 488 Mass. at 230. In addition, a judge must also determine "not less than annually" whether the department is making reasonable efforts to reunify the child with his or her parents. G. L. c. 119, § 29C. Such "repeated opportunities for judicial review . . . greatly diminish[] the risk of erroneous deprivation." Care & Protection of Rashida, 489 Mass. 128, 135 (2022). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.