NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-619

CARE AND PROTECTION OF VIJAY.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial, a Juvenile Court judge found the father currently unfit to parent Vijay and awarded permanent physical custody to the mother.  The father appeals, arguing that several of the judge's findings of fact were clearly erroneous, and the unfitness determination was therefore not supported by clear and convincing evidence.  The father also argues that the judge erred by ignoring evidence of the mother's unfitness when granting her permanent custody of Vijay.  We affirm.

Background.  We recount the relevant facts from the judge's findings, reserving certain details for later discussion.  The mother and father met in 2013 and were married in 2015.  Vijay was born in 2015.  The father has been diagnosed with anxiety, depression, delusional disorder, a mood disorder, and a thought

_____

[1] A pseudonym.

disorder with significant paranoid thinking. His mental illness has resulted in numerous episodes in which he displayed paranoid behavior. For example, he spoke about aliens, he believed his cell phone was being hacked, and he believed the mother was being unfaithful and would not allow her to go to work with other men, believing that the mother had a "sexual addiction." Other times, he stated that he believed he was being monitored by his television and other electronics or watched by the police. In August of 2021, this fear had grown to the point that he contacted the FBI about his devices being hacked, who in turn informed the Department of Children and Families (department). The father denies that he has any mental health issues and has not engaged in mental health treatment for the problems at issue in this case.

In 2017, after the department filed a prior care and protection petition, a Juvenile Court judge ordered that the mother have sole physical custody of the child, that the parents have shared legal custody, and that the father have visitation. In February 2019, the mother experienced substance use issues and, with her consent, a judge of the Probate and Family Court awarded sole physical custody of Vijay to the father. In August 2020, the mother, having remarried, moved to Virginia with her husband and his three children, while Vijay remained in Massachusetts with the father.

2

While in the father's care, the father's paranoia affected Vijay in several ways.[2]  The father's paranoia entered an acute phase after a visit to a hospital emergency room in February 2021, where the father, understandably concerned, took Vijay because the child had blood in his stool.  The father reported that Vijay had told him the mother's husband had sexually abused him.  The doctor who examined Vijay found no signs of sexual abuse and determined the blood was likely caused by constipation.  Vijay later admitted that his allegations of sexual abuse were untrue and that he made up the story when he was bored and lonely at the father's home.  The father reported the alleged abuse to the department, who investigated and found no support for the allegations.

In May 2021, the father abruptly went to Brazil, in part due to his paranoid belief that he was being tracked by the mother's husband.  The father planned for Vijay to reside with the mother and her husband while he was in Brazil, which the child did for two months.  The mother moved Vijay to Virginia, enrolled him in school and football, and obtained a pediatrician and therapist for him.  The father returned from Brazil the

---

[2] In August 2019, the father reported to Vijay's physician that either the father's girlfriend or his girlfriend's mother was poisoning Vijay.  The father later explained that his own thinking may have been delusional and admitted that he sometimes blew things out of proportion.  He explained that Vijay had vomited that day and that he let his thoughts get away from him.

first week of August 2021 and drove to Virginia to take Vijay from the mother's house.[3]  The father brought Vijay back to Massachusetts, falsely promising the mother he was only going to take the child away for two weeks.  At all times, the parents retained joint legal custody.  Once back in Massachusetts, Vijay, who had just turned six, told a department social worker that the father had to leave because "people [were] after my dad because it's not a safe world."  Later that month, the father took Vijay to urgent care, reporting Vijay was urinating frequently, and expressed his concern that Vijay had contracted a sexually transmitted disease at the mother's house.  Tests showed no issue, and the doctor noted no other concerns.[4]  The next day, the father took Vijay to his pediatrician for what turned out to be a fungal infection.  After the child was seen, the father asked to meet with the doctor alone to discuss his

---

[3] The father did not inform the mother he was traveling from Massachusetts to Virginia to take Vijay.  When he arrived there, he told the mother he would return Vijay to her in two weeks so he could start school in Virginia.  She asked to put that agreement in writing, but he believed she was "blackmailing" him into signing documents that would give her custody of Vijay. The father then refused to share information with the mother about where he and Vijay were living, despite the fact that they shared legal custody.

[4] Later that month, the father obfuscated his true reasons for this visit when a department social worker asked him why he had taken Vijay to urgent care.  The father became defensive when the social worker brought up the father's belief that Vijay had a sexually transmitted disease.

belief that Vijay was sexually abused by the mother's husband. The doctor noted concerns about the father's paranoia and questioned his truthfulness. He recommended that Vijay would benefit from therapy and that the child start meeting with a social worker until enrolling in therapy. The father did not follow up on the doctor's recommendation.

In September 2021, the father brought Vijay to a different pediatrician, again for symptoms he believed were related to sexual abuse. This visit resulted in the pediatrician, a mandatory reporter, filing a report pursuant to G. L. c. 119, § 51A, alleging sexual abuse of Vijay by the mother's husband. The department, upon conducting an investigation pursuant to G. L. c. 119, § 51B, learned from the pediatrician that Vijay never reported any abuse by the mother's husband but rather the father had supplied that information. The pediatrician saw no signs of sexual abuse or trauma during Vijay's examination, and indicated that the father appeared to be encouraging Vijay to say things she felt may have been untrue.

In addition to the repeated doctor visits, the father's mental illness interfered with his ability to provide care for Vijay. The father lacked housing stability -- he and Vijay lived in a shelter prior to obtaining a studio apartment through the Department of Transitional Assistance (DTA). By January 2022, Vijay had accrued twenty-three absences from school that

5

year.  The school's social worker reported the school absences to the department, noting that one of Vijay's teachers expressed concerns for Vijay as he often told teachers that the mother was "evil" and "wicked."  The teacher believed that Vijay was struggling academically because of the school absences and attempted to communicate with the father about the importance of Vijay attending school regularly.  The father was not receptive to this conversation and was not concerned about Vijay's school absences, telling the teacher that he was proud of how well Vijay was doing, and that his only concern was with the school sharing any information about Vijay with the mother.  The father also ignored the advice of Vijay's pediatrician that Vijay would benefit from therapy.  When requested to enroll Vijay in therapy by a department interim action plan,[5] the father engaged a therapist only to seek a sexual abuse evaluation in order to provide evidence to a judge that the mother's husband had abused Vijay.  The therapist had concerns that the father's untreated and unmedicated mental health issues were negatively affecting Vijay's own mental health and sense of reality.  The father became upset when the therapist did not provide the sexual abuse assessment he was seeking and terminated her services.

---

[5] The department created the interim action plan for the father after a meeting on October 28, 2021.

In February 2022, the department filed the underlying care and protection petition "seeking a non-emergency hearing date to determine whether custody should remain with" the father. The father was granted conditional custody of Vijay later that month. In May 2022, after the father failed to enroll Vijay in therapy -- one of the conditions of the father's conditional custody -- the department was granted custody of Vijay. After a four-day trial, a Juvenile Court judge determined the father was unfit to assume parental responsibility and granted custody of Vijay to the mother. This appeal followed.

Discussion. 1. Standard of review. "[A] finding of parental unfitness must be based on clear and convincing evidence in care and protection cases." Custody of a Minor, 392 Mass. 719, 725 (1984). "When making this determination, subsidiary findings of fact must be supported by a preponderance of the evidence, with the ultimate determination of unfitness based upon clear and convincing evidence." Adoption of Rhona, 63 Mass. App. Ct. 117, 124 (2005). "Clear and convincing proof involves a degree of belief greater than the usually imposed burden of proof by a preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases." Care & Protection of Yetta, 84 Mass. App. Ct. 691, 696 (2014), quoting Custody of Eleanor, 414 Mass. 795, 800 (1993).

2.  Unfitness determination.  The father challenges certain of the judge's factual findings and claims the determination of his unfitness therefore was not based on clear and convincing evidence.  The father argues that the judge erred in finding (i) that there was no evidence to corroborate his belief that Vijay was sexually abused; (ii) that the father brought Vijay to multiple doctors seeking treatment for sexual abuse; and (iii) that the father lacked housing stability "throughout the pendency of the case."  "We do not substitute our judgment of the evidence for the subsidiary findings of the judge absent clear error."  Mason v. Coleman, 447 Mass. 177, 186 (2006).  "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  Custody of Eleanor, 414 Mass. at 799, quoting Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977).

The father points to facts in the record that he argues corroborated his belief that Vijay was abused.[6]  He argues,

_____

[6] These facts include that the father discovered blood in Vijay's stool, that Vijay alleged to the father that the mother's husband had abused him, that Vijay's penis was itchy, that Vijay engaged in age-inappropriate sexual behaviors, and that a department social worker followed up after an interview

8

accordingly, that the judge's finding that there was "no evidence corroborating Father's beliefs that [Vijay] had been the victim of any sexual abuse" was clearly erroneous.  The father's argument is misplaced.  The question before the judge was not whether the father earnestly believed Vijay was abused, but rather whether that belief was a product of the father's untreated mental illness.  The judge had an obligation to evaluate the credibility of the evidence including the father's testimony and make findings of fact.  See Custody of Eleanor, 414 Mass. at 800.  Here, the judge did not credit the father's beliefs regarding sexual abuse, so it was appropriate for the judge to look for corroboration elsewhere.  The record supports the judge's finding that there was no evidence, other than the father's uncredited assertions, that corroborated the father's belief that Vijay was sexually abused.  See Adoption of Rhona, 63 Mass. App. Ct. at 124.

Next, the father challenges the finding that he brought Vijay to multiple doctors seeking treatment for sexual abuse. Although the father articulated reasons other than sexual abuse for the visits, it was within the judge's discretion to weigh the credibility of the father's ostensible reasons.  See Adoption of Nancy, 443 Mass. 512, 515 (2005).  We see no error

with the father and Vijay to determine whether further investigation was necessary.

9

in the judge's conclusion that the main purpose of the multiple visits to doctors was to seek corroboration of sexual abuse, particularly where the father broached the subject of sexual abuse each time.  See id.

Finally, the father disagrees with the judge's characterization that he lacked housing stability "throughout the pendency of this case."  At the end of the day, this argument amounts to a disagreement with the judge's weighing of the evidence.  See Smith v. Jones, 69 Mass. App. Ct. 400, 404 (2007) ("As in other contexts where cases center on the best interests of the child, we will not disturb the judge's findings or substitute our judgment for that of the trial judge absent clear error").  Although it is undisputed that the father did temporarily reside at an apartment through DTA, the record is also clear that the father had a history of housing instability and was homeless when the judge determined him unfit.  Even if the judge's finding was erroneous as to that period of time, the record supports the conclusion that the father lacked stable housing because he was homeless and had turned down the opportunity to obtain housing due to his mental health issues.

After arguing the above facts were clearly erroneous, the father argues the remaining facts do not amount to clear and convincing evidence of his unfitness.  The father maintains that he took good care of Vijay and that the judge's findings do not

10

support a nexus between his mental illness and a detriment to Vijay's welfare.  We disagree.

In a comprehensive decision, the judge recognized the bond between the father and Vijay and the father's care of Vijay, but her primary concern was with the father's mental illness. "Mental disorder is relevant only to the extent that it affects the parents' capacity to assume parental responsibility, and ability to deal with a child's special needs." Adoption of Luc, 484 Mass. at 146, quoting Adoption of Frederick, 405 Mass. 1, 9 (1989).  Here, the judge's conclusion that the father was unfit due to his untreated mental illness and his resultant inability to assume parental responsibility is well supported by the record.  As discussed above, his continued irrational belief that Vijay had been sexually abused exposed the child to unnecessary medical treatment and challenged Vijay's sense of reality.  Even if we were to ignore the contested facts above, the uncontested evidence supports the judge's determination of the father's unfitness.  The judge properly considered the father's lengthy history of untreated mental health conditions and the fact that he had refused to acknowledge that he had mental health issues or engage in treatment.  In addition, the judge properly considered the fact that the therapist and doctors who evaluated Vijay expressed concerns that the father's mental illness was affecting Vijay's emotional and mental

11

health.[7]  Vijay had an excessive number of absences from school, and a teacher had difficulty communicating to the father about the effect of these absences on Vijay's academics.  The father did not enroll Vijay in therapy despite numerous recommendations by providers that the child would benefit from it.  Finally, the father's refusal to acknowledge or seek treatment for his mental illness is also relevant to the judge's unfitness determination.  See Adoption of Luc, supra at 147.  We disagree with the father's contention that the evidence failed to establish a nexus between his mental health issues and his ability to parent Vijay.  In sum, we discern no error in the judge's determination that the department met its burden of proving the father's unfitness by clear and convincing evidence.

3.  Mother's fitness.  The judge granted permanent physical custody to the mother.  The department presented no evidence of the mother's unfitness at trial and asked that she be granted custody.  The father did not object at trial and argues for the first time in this appeal that the mother was unfit.  "As a general practice we do not consider issues . . . raised for the

_____

[7] The father appears to argue that some of the medical opinions the judge relied on in making these findings were unreliable.  The father did not object to the introduction of the exhibits containing these opinions.  To the extent the father believes the judge should not have relied on the information, he merely disagrees with the judge's weighing of the evidence.  See Smith v. Jones, 69 Mass. App. Ct. at 404.

12

first time in this court." Adoption of Donald, 52 Mass. App. Ct. 901, 901 (2001). Although the issue was likely not preserved in the trial court, the evidence nevertheless supported the judge's finding of fitness and grant of custody to the mother. The judge offered the requisite guidance on Vijay's placement, indicating that placement with the mother was in the child's best interests. See Care & Protection of Three Minors, 392 Mass. 704, 717 (1984). The judge's findings of fact acknowledge the mother's previous and ongoing struggles. However, the judge also found that Vijay was doing well with the mother and was living in a safe and appropriate environment where he was engaged in school and therapy, played football, and had a good relationship with his family members. We discern no error in the judge's determination on the record before her that despite some of her challenges in the past, the mother was currently fit.

Conclusion. Given the judge's findings, we discern no abuse of discretion or clear error in the judge's determination

that the father was currently unfit, that the mother was fit to assume parental responsibility, and that Vijay's best interests were served by granting the mother physical custody.

<u>Judgment affirmed</u>.

By the Court (Rubin, Henry & Walsh, JJ.[8]),

Clerk

Entered: April 14, 2025.

---

[8] The panelists are listed in order of seniority.