NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1143

WILLIAM SANTIAGO

vs.

KRYSTAL HEDGE & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, William Santiago, appeals from judgments dismissing his complaint for failure to state a claim on which relief could be granted. At all relevant times Santiago has been a prisoner in State custody. The gist of Santiago's complaint is that in 2019, he voluntarily transferred to the Massachusetts Treatment Center (MTC) in Bridgewater so that he could participate in the sex offender treatment program there, but that the various defendants "illegally" prevented him from progressing through the program and thereby deprived him of due process of law. The sex offender treatment program at the MTC

---

[1] Malee Prete, Jennifer McAllister, Jaleesa Freitas, Kathryn Degnan-LeDoux, Susan Lantagne, Chika Bosah, Chelsea Routhier-McNeil, and Victor J. Correia.

was not run by State employees, but rather by a private contractor, Wellpath, LLC; Santiago's complaint names as defendants several Wellpath employees and affiliates, as well as the superintendent of the MTC, Victor Correia.  Because Santiago has failed to plausibly assert any violation of the due process clause, we affirm.

Background.[2]  Santiago began the sex offender treatment program at the MTC in September of 2019.  He progressed to stage three of the program in 2021.  In December of 2021, his therapist recommended that he be advanced to stage four, but shortly thereafter, Santiago failed a psychoeducation class in human sexuality.  Santiago claims that defendant Bosah, a Wellpath employee, failed him "maliciously" due to a disagreement over class materials.  Santiago filed grievances with respect to the decision to fail him in the class, both informally and then formally, but the grievances were denied.

Thereafter Santiago was notified to appear for an interview with the "Senior Clinical Review Team" (SCRT) -- a panel established by Wellpath Policy 85.00 "to provide clinical oversight and consultation . . . for treatment decisions" in the sex offender treatment program.  The interview occurred on March

_____

[2] The facts cited are from the well-pleaded allegations in Santiago's complaint, and for present purposes are taken as true, in accordance with the standard of review of an allowance of a motion to dismiss.  Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 253 (2021).

22, 2022, after which the SCRT "failed" Santiago, preventing him from advancing from stage three to stage four.

Santiago's claim arises from the SCRT interview process. He claims that the Wellpath defendants violated their own policy, 85.00, in multiple ways. These include, for example, his assertions that there was no proper basis for having an SCRT interview of him, that the SCRT failed to document the reasons for the interview, and that the SCRT failed to provide a timely written report of its decision, all as required by policy 85.00. Santiago alleges that the Wellpath defendants' failures to follow Wellpath's policy amounted to a deprivation of due process. As to whether he was deprived of a liberty interest, Santiago posits that the interview prevented him from advancing in the sex offender treatment program, and that if he had completed the program, he would have better results applying for parole, and better results with respect to his sex offender level designation.

In his appellate brief, Santiago emphasizes an additional argument, which is that his First Amendment rights were violated by the Wellpath defendants' decision to subject him to an SCRT interview, because that decision was made in retaliation for Santiago's filing of the grievances against his Wellpath teacher. Santiago made a similar argument in opposition to the motion to dismiss in the trial court, but no First Amendment

3

retaliation claim is alleged in Santiago's complaint. The Superior Court judge dismissed all claims against the Wellpath defendants and Correia, reasoning that it was not improper to refer Santiago for an SCRT interview, and that Santiago had no due process claim because, among other things, he had no liberty interest in being granted parole. See Greenman v. Massachusetts Parole Bd., 405 Mass. 384, 388 n.3 (1989), citing Greenholtz v. Inmates of the Neb. Penal & Correctional Complex, 442 U.S. 1, 9 (1979). The judge did not address any First Amendment retaliation argument. This appeal followed.

Discussion. 1. Alleged deprivation of due process. Santiago's claim is that the Wellpath defendants and Correia violated his Federal constitutional rights. It is thus a claim under 42 U.S.C. § 1983, which creates a claim for deprivations of Federal constitutional rights effected under color of State law. As noted, Santiago's complaint claimed only one constitutional violation -- of the due process clause -- based on the allegation that the Wellpath defendants required an "illegal" SCRT interview, and failed to follow Wellpath's procedures under policy 85.00.

To establish a claim for violation of the due process clause, Santiago needed to allege (1) a deprivation of a recognized liberty (or property) interest, (2) that occurred without the provision of the required procedural safeguards.

4

Parsons v. Mobile Home Park Rent Control Bd. of Chicopee, 423 Mass. 631, 634-635 (1996); Rumford Pharmacy, Inc. v. East Providence, 970 F.2d 996, 999-1000 (1st Cir. 1992).[3]  Here, Santiago failed to plausibly allege either element.  Santiago does not have a protected liberty interest in taking a sex offender treatment program.  It is true that the Commonwealth recommends that sex offenders engage in the program, and the Commonwealth offers the program to some (but not all) incarcerated individuals.  The Commonwealth is not required by the due process clause to provide sex offender treatment to prisoners, however, nor is there a material infringement of Santiago's liberty because he was denied (or delayed) in advancement through the program.  A liberty interest is infringed when a punishment "imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Puleio v. Commissioner of Correction, 52 Mass. App. Ct. 302, 306 (2001), quoting Sandin v. Conner, 515 U.S. 472, 484 (1995).  Unavailability of a program of this type does not meet this definition.

---

[3] Santiago would also have to show that the deprivation resulted from State action.  Here, where Wellpath was a private contractor working for the Commonwealth arguably performing a state function, we will assume, without deciding, that the complaint plausibly alleges a deprivation arising from State action.  See Baptiste v. Executive Office of Health & Human Servs., 97 Mass. App. Ct. 110, 115-116 (2020), cert. denied, 141 S. Ct. 2626 (2021).

5

Santiago argues, however, that as a result of being denied (or delayed) in completing the sex offender treatment program, he was disadvantaged in his efforts to obtain parole, and disadvantaged when litigating his sex offender classification level.  The disadvantages Santiago alleges, even if true, do not rise to the level of a deprivation of a liberty interest.  As the motion judge pointed out, there is no cognizable liberty interest in being granted parole -- that is, in the possible early release from a lawfully imposed sentence.  See Greenman, 405 Mass. at 388 n.3.  Moreover, the deprivation of liberty that Santiago claims (concerning his sex offender classification or parole status) is too speculative and attenuated from the wrong of which he complains.  For example, completion of a sex offender treatment program relates to only two of over thirty factors that the Sex Offender Registry Board must consider in establishing sex offender classification levels.  It by no means controls what level a particular sex offender is assigned, and often has little influence on the result in a particular case.  See Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011), citing Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 812-813 (2006) (hearing examiner has discretion to consider which factors are applicable and how to weight each factor).  Similarly, completion of a sex offender treatment program is one of many

6

factors considered by the parole board.  See <u>Rodriguez</u> v.

<u>Massachusetts Parole Bd</u>., 490 Mass. 596, 599-600 & n.4 (2022).

The delay in completing the sex offender treatment program at

issue does not qualify as an impairment of a protected liberty

interest.

Second, and in any event, Santiago received more than

adequate process here.  Santiago received a hearing of which he

had notice, an opportunity to be heard before the panel, and a

written explanation of the reasons why he was not advanced.  See

<u>Thaddeus</u> v. <u>Secretary of the Executive Office of Health & Human</u>

<u>Servs</u>., 101 Mass. App. Ct. 413, 424-425 (2022), quoting <u>Mathews</u>

v. <u>Eldridge</u>, 424 U.S. 319, 333 (1976) ("[p]rocedural due process

requires at least the 'opportunity to be heard at a meaningful

time and in a meaningful manner'").  Santiago's complaint is

that in requiring the SCRT hearing and then (allegedly) failing

to document it properly, the Wellpath defendants did not follow

Wellpath's policy.  However, a failure to follow an internal

policy (assuming such occurred) does not equate to a failure to

provide the process required by the due process clause.  See,

e.g., <u>Owens</u> v. <u>Evans</u>, 878 F.3d 559, 563 (7th Cir. 2017)

(prison's failure to follow inmate grievance procedure not

federal due process violation).  Santiago received all necessary process here.[4]  See Thaddeus, supra.[5]

---

[4] We do not understand Santiago to be making a substantive due process argument and, in any event, such an argument could be successful only on a showing that the governmental conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998).  See Commonwealth v. G.F., 479 Mass. 180, 192 (2018).  No such allegation is made here.

[5] As noted, in his appellate brief Santiago advances a different constitutional argument, not in his complaint, which is that the Wellpath defendants also violated his First Amendment rights, because the decision to hold an SCRT review was in retaliation for the grievances Santiago filed.  Santiago first raised this First Amendment claim in his opposition to the motion to dismiss.

We do not address Santiago's purported First Amendment claim, as we do not have an operative complaint, and clear allegations, to consider.  We note that to make out such a claim one element Santiago must meet is that the defendants took a qualifying "adverse action" against him.  Partelow v. Massachusetts, 442 F. Supp. 2d 41, 51 (D. Mass. 2006), citing Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006).  We also note that Wellpath Policy 85.00 establishes SCRT review as an integral component of the MTC's sex offender treatment program, in which Santiago was a voluntary participant.

8

The judgments of dismissal are affirmed.

<u>So ordered</u>.

By the Court (Ditkoff,
  Englander & Smyth, JJ.[6]),

_Paul Little_

Clerk

Entered: August 14, 2024.

---

[6] The panelists are listed in order of seniority.

9