NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-608

ELI PARISEAU, petitioner.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On July 30, 2010, a Superior Court judge adjudicated Eli Pariseau, the petitioner, a sexually dangerous person and committed him to the Massachusetts Treatment Center.  The petitioner filed a petition pursuant to G. L. c. 123A, § 9 for examination and discharge to determine whether he remained sexually dangerous on June 21, 2019.  After a trial, on January 19, 2023, a jury returned a verdict that the petitioner remains sexually dangerous.  The petitioner appeals, arguing that (1) the prosecutor's admittedly erroneous closing argument prejudiced the petitioner, (2) the judge improperly "allowed the Commonwealth's experts to testify to the "above average" risk of reoffense they assigned to the petitioner through the Static-

99R,[1] (3) the judge improperly allowed testimony on uncharged allegations of the petitioner's misconduct, and (4) the judge improperly excluded evidence that the petitioner was preclassified as a level three sex offender by the Sex Offender Registry Board (SORB).  We affirm.[2]

Discussion.  Because the petitioner did not object to the closing argument or to the testimony of uncharged allegations of the petitioner's misconduct,[3] those claims were not preserved, and we therefore review to determine whether any error created a substantial risk of a miscarriage of justice.[4]  See R.B.,

_____

[1] The Static-99R is an actuarial tool that predicts an adult male sex offender's likelihood of reoffending based on a number of static factors, including, inter alia, the offender's age and number of prior sex offenses.  Commonwealth v. George, 477 Mass. 331, 335 n.2 (2017).

[2] After his January 2023 trial, a jury again found the petitioner to be sexually dangerous on September 12, 2025.  The petitioner is scheduled for another trial, pursuant to G. L. c. 123A, § 9, on November 2, 2026.  Because many of the same issues raised here are likely to arise again in the petitioner's subsequent trials pursuant to § 9, we exercise our discretion to review the petitioner's claims of error.  See Thaddeus v. Secretary of the Executive Office of Health & Human Servs., 101 Mass. App. Ct. 413, 418 (2022).

[3] The petitioner contends that he preserved the uncharged conduct issue by raising it in a motion in limine prior to trial.  However, counsel for the petitioner conceded that the alleged conduct was admissible if it related to an offense for which the petitioner was convicted and did not object when witnesses for the Commonwealth referenced the uncharged conduct. See Mass. G. Evid. § 103(a)(1) note (2025).

[4] The petitioner argues that he preserved his argument in a motion in limine in which he asked the court to preclude the

2

_petitioner_, 479 Mass. 712, 717-718 (2018).  The petitioner preserved his other claims, which we review for prejudicial error.  See Green, _petitioner_, 475 Mass. 624, 629 (2016).

1.  _Closing argument_.  During closing argument, in an effort to convey to the jury the risk of the petitioner's likelihood to reoffend the prosecutor asked the jury to imagine whether they were willing to eat from a box of one hundred cookies where they knew twelve to eighteen of the cookies were fatally poisonous, thereby analogizing to an estimate of the petitioner's likelihood of reoffending.[5]  The argument was nearly identical to one that a panel of this court previously concluded was improper.[6]  See DeAmicis, _petitioner_, 104 Mass. App. Ct. 1112 (2024).  In that case the panel reasoned as follows.

> "Although the Supreme Judicial Court has held that the seriousness of the harm is a factor in determining likelihood of reoffense, see [_Commonwealth_ v. _Boucher_, 438

_____

Commonwealth from arguing that it was the jury's responsibility to protect public safety.  However, in allowing the motion, the judge explicitly distinguished raising concerns about public safety from raising the petitioner's risk of reoffense, noting that the latter was permissible.

[5] Two expert witnesses for the Commonwealth testified that of the sex offenders who receive the same score as the petitioner from the administration of the Static-99R, 12.8 percent sexually reoffend within five years and 18.8 percent sexually reoffend within ten years.

[6] The prosecutor in the present case, who was also the prosecutor in DeAmicis, _petitioner_, did not have the benefit of this decision when he used the argument again here and stated that he stopped making the argument when it was challenged on appeal.

3

Mass. 274, 276 (2002)], the question before the jury is whether the risk is 'likely.'  See G. L. c. 123A, § 1.  The prosecutor's analogy to poison cookies, however, implies that in the defendant's case, any amount of risk is too great a risk.  That is a misstatement of the law, and the prosecutor's analogy was thus improper."

Id.

The Commonwealth concedes the argument was improper and we agree.  Nevertheless, the closing argument did not create a substantial risk of a miscarriage of justice.  The Commonwealth presented strong evidence that the petitioner remained sexually dangerous, including the fact that he sexually reoffended twice, continues to deny any criminal conduct, and engaged in treatment only for a limited time before stopping treatment altogether, and engaged in consensual sex with another resident of the treatment center -- against the treatment center's policies -- just months prior to his trial.  In addition, the judge twice instructed the jury that closing arguments are not evidence, including one time immediately before closing arguments were presented to the jury.  See Commonwealth v. Andrade, 468 Mass. 543, 549 (2014) ("The jury are presumed to follow the judge's instructions").

2.  Static-99R risk category labels.  "The Static-99R is an actuarial tool, designed to predict the recidivism risk of sexual offenses in adult male sex offenders who have been convicted of at least one sexual offense."  Commonwealth v.

4

George, 477 Mass. 331, 335 n.2 (2017).  In George, the Supreme Judicial Court held that the previously used risk-of-reoffense categories that labeled an adult male sexual offender's risk of reoffense as "low," "low-moderate," "moderate-high," and "high," were inadmissible because they "lack[ed] probative value in the sexual dangerousness calculus and should not be admitted at trial," id. at 339-340, but noted that "[t]o resolve the shortcomings of the Static-99R risk category labels, test developers have created new risk category labels, and "[the court] take[s] no position on the admissibility of those labels," id. at 340 n.8.  Further, the Supreme Judicial Court noted that its holding was "limited" to only the risk category labels, and "[b]oth the Static-99R score and the corresponding percentage . . . continue to be admissible."  Id. at 341.

Relying on George, the petitioner contends that it was prejudicial error to allow the Commonwealth's expert witnesses to testify to the "above average" risk of reoffense they assigned to the petitioner through the Static-99R.  We disagree.

The Supreme Judicial Court determined that the previously used risk category labels were inadmissible because the Static-99R test developers acknowledged an "absence of accepted standards or metrics connecting the risk category labels to specific meanings, such as recidivism rates, psychological features, or expected treatment needs" (quotation and citation

5

omitted).  George, 477 Mass. at 340.  As a result, the new risk labels now categorize a person's risk of reoffense as "very low," "below average," "average," "above average," and "well above average," depending on how an offender's risk of reoffense compares to other male sexual offenders.  The new categories therefore are directly linked to the admissible aspects of the Static-99R through an objective measure, that being whether the petitioner is more or less likely to reoffend than an average adult male sex offender.  Cf. id.

Even assuming without deciding that the new labels were inadmissible, as applied here any error would be nonprejudicial. In George, the admission of testimony referencing the erroneous risk labels was found to be nonprejudicial because of "the limited nature of the use of the Static-99R in the qualified examiners' over-all risk assessment analysis."  George, 477 Mass. at 341.  The same reasoning applies here, where the prosecutor did not reference the risk category labels during his closing argument, the two expert witnesses for the Commonwealth collectively only referenced the risk labels three times, the experts contextualized the labels using scores and risk of reoffense percentages that the Supreme Judicial Court recognized as admissible in George, supra at 341-342, and they further characterized their evaluations of the petitioner's risk of reoffense using dynamic factors not considered by the Static-

6

99R.  In sum, we conclude that it was not error for the Commonwealth's experts to refer to the "above average" risk category label that they assigned to the petitioner through the Static-99R, and even if it had been error, any references to the risk category label were so limited as to be nonprejudicial.

3.  Testimony of uncharged conduct.  "[P]olice reports relating to [the petitioner's] prior sexual offenses . . . shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial."  G. L. c. 123A, § 14 (c).  "[O]ther information in police reports -- including any statements describing the defendant's conduct and the circumstances attendant to the offense -- is also admissible.  The fact that that information could have, but did not, result in additional criminal charges is irrelevant to its admissibility under § 14 (c)."  Commonwealth v. Given, 441 Mass. 741, 745 (2004).  A report of uncharged conduct "[is] relevant to the crime charged" if it "show[s] a pattern of conduct and the probable existence of the same passion or emotion at the time in issue."  Commonwealth v. Starkus, 69 Mass. App. Ct. 326, 333 (2007).

At trial, two of the Commonwealth's expert witnesses referenced a police report related to the petitioner's 1984 conviction for open and gross lewdness.  In that report it was alleged that the petitioner had also sexually abused two six

7

year old girls, though the petitioner was never charged based on these allegations.  The petitioner contends that the reported allegations did not relate to a crime that he was charged with, and so it was error to admit the references to this uncharged conduct.  We disagree.

Evidence that the petitioner allegedly abused two six year old girls was relevant to the petitioner's 1984 conviction for open and gross lewdness.  See Starkus, 69 Mass. App. Ct. at 333. Specifically, the petitioner claims that his 1984 conviction was based on a misunderstanding, namely that he was giving the three year old victim a bath and was using the bathroom when the victim's father came upon them.  Thus, evidence that the petitioner had allegedly abused two additional prepubescent victims around the time he was found alone, with his pants down, in a room with a three year old victim was relevant to show that the petitioner's 1984 conviction was not the result of a misunderstanding, but rather was part of a pattern of conduct of intentional sexual assaults against prepubescent children.  See id.

4.  The petitioner's preclassification as a level three sex offender.  Before trial, the judge allowed the Commonwealth's motion in limine to exclude evidence of the fact that the SORB preclassified the petitioner as a level three sex offender on the ground that it was not relevant to whether the petitioner

8

remained sexually dangerous and introduced a "wholly extraneous issue." The petitioner argues that the judge erred by excluding evidence of his preclassification because he contends that public dissemination of his information would reduce his risk of reoffense,[7] and his likelihood to reoffend is relevant to whether he remains sexually dangerous. We disagree.

The judge was well within her discretion to exclude the petitioner's preclassification level on the ground that its probative value would be substantially outweighed by the risk of confusing the issues presented to the jury (or, as the judge put it, by introducing a "wholly extraneous issue"). See Mass. G. Evid. § 403 (2025) ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues . . ."). Both parties during the pretrial hearing recognized the lack of record evidence supporting the efficacy of the SORB's publication system. See generally Moe v. Sex Offender Registry Board, 467 Mass. 598, 612 n.11 (2014) (noting lack of evidence that internet publication of sex offenders prevented sexual crimes). It is therefore predictable that admitting the petitioner's preclassification level would have risked inviting the parties

_____

[7] The SORB is required to publish the sex offender information of level two and level three sex offenders in an online database available to the public. G. L. c. 6, § 178D.

9

to introduce evidence on the efficacy of internet publication of sex offenders, an issue that the jury was not tasked with deciding.  See Mass. G. Evid. § 403.

Judgment affirmed.

By the Court (Vuono, Desmond & Toone, JJ.[8]),

Clerk

Entered:  January 28, 2026.

---

[8] The panelists are listed in order of seniority.